[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10706
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 17, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-03443-CV-2-SLB-TMP

DANNY EUGENE MOULDS,

Plaintiff-Appellant,

versus

STEPHEN BULLARD,
DONAL CAMPBELL,
JOHN ARTHUR,
SGT. RONALD CARTER,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 17, 2009)

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Danny Eugene Moulds, an Alabama state prisoner proceeding pro se,

appeals the dismissal of his claims against various John Doe correctional officers at

the Donaldson Correctional Facility ("Donaldson") and the grant of summary judgment to Warden Stephen Bullard, Prison Commissioner Donal Campbell, Correctional Officer Alphonso Barber, Correctional Officer John Arthur, Sergeant Ronald Carter, Correctional Officer Trenton Eads, and Captain Jimmy Richburg, in his civil rights action brought pursuant to 42 U.S.C. § 1983. Moulds argues that: (1) the district court improperly denied his discovery requests; (2) dismissal of the claims against the unnamed defendants was improper; and (3) the record contained genuine issues of material fact on his constitutional claims sufficient to survive summary judgment.[1] After careful review, we affirm in part and reverse in part.

"We review a denial of discovery for abuse of discretion." White v. Coca-Cola Co., 542 F.3d 848, 853 (11th Cir. 2008). We also review for abuse of discretion a district court's decision "[o]n motion or on its own, . . . at any time, on

_____

[1] Moulds also argues that the district court improperly granted qualified immunity to the defendants and found that underfunding of a prison may be a complete defense to a claim of unconstitutional conditions of confinement. Since a close reading of the record shows that the district court did not reach these conclusions, Moulds's arguments to this effect fail. To the extent Bullard, Campbell and Richburg were sued in their official capacities, the district court found they were entitled to Eleventh Amendment sovereign immunity. Moulds has failed to argue that this finding was incorrect. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned. Moreover, we do not address arguments raised for the first time in a pro se litigant's reply brief.") (citations omitted). Thus, we only review Moulds's claims against these three defendants to the extent he sued them in their individual capacities.

In addition, we note that Moulds's due process claim relating to the denial of an appeal was not raised in Moulds's initial brief, and therefore has also been abandoned. See id. But even if we were to entertain this claim, we find no merit to it, since we have never held that prisoners have a constitutional right to an administrative appeal from a disciplinary proceeding.

just terms, [to] add or drop a party." Fed.R.Civ.P. 21; <u>Fritz v. Am. Home Shield</u> <u>Corp.</u>, 751 F.2d 1152, 1154 (11th Cir. 1985). We review a grant of summary judgment <u>de novo</u>, viewing the evidence in the light most favorable to the nonmoving party. <u>Sierminski v. Transouth Fin. Corp.</u>, 216 F.3d 945, 949 (11th Cir. 2000). Finally, it is worth noting that "[w]e read liberally briefs filed <u>pro se</u>." <u>Lorisme v. I.N.S.</u>, 129 F.3d 1441, 1444 n.3 (11th Cir. 1997).

1.

First, we are unpersuaded by Moulds's claim that the district court improperly denied his discovery requests. We recognize that "[p]ro se pleadings are . . . [to] be liberally construed." <u>Boxer X v. Harris</u>, 437 F.3d 1107, 1110 (11th Cir. 2006) (quotations omitted). But <u>pro se</u> litigants still must follow time requirements. <u>See</u> <u>Garvey v. Vaughn</u>, 993 F.2d 776, 780 (11th Cir. 1993). "Liberal construction does not mean liberal deadlines." <u>Vanderberg v. Donaldson</u>, 259 F.3d 1321, 1326 (11th Cir. 2001) (quotations omitted).

As Moulds concedes in his reply brief, all his discovery motions were untimely. His first request was denied as premature since it was filed before the discovery schedule was issued. That schedule required all discovery requests to be filed within 90 days of October 31, 2005, but Moulds did not file another discovery request until March 2006. Nor has Moulds offered any reason for his failure to file

3

his discovery requests within the prescribed period. Accordingly, the district court did not abuse its discretion in denying his discovery requests as untimely.

2.

We also reject Moulds's suggestion that the dismissal of claims against the unnamed defendants was improper. Plaintiffs, particularly when acting pro se, may sue "John Doe" defendants under certain circumstances. See Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992). "There may be times when . . . the plaintiff is unwilling or unable to use a party's real name. Also, one may be able to describe an individual . . . without stating his name precisely or correctly." Id. (quotations and footnote omitted). In Dean, we held that the district court should not have used the supposed invalidity of fictitious-party practice to refuse to join an unnamed defendant, as Dean had provided a job title that, while incorrect, seemed to correspond to a particular position at the jail; requested but not yet received a report allowing him to name the defendant; and provided a "description [that] was sufficiently clear to allow service of process" on the defendant. Id.

Here, Moulds implicated a number of John Doe corrections officers in his amended complaint. He completely failed to describe some of those officers. He gave general descriptions of others, such as by indicating the duty stations to which they were assigned, but nothing in the record suggests those officers' identities and

4

Moulds did not timely request any discovery that would have allowed him to learn their names and serve process on them. Thus, although the district court overstated the law by concluding that fictitious-party practice is unauthorized in this Circuit, its dismissal of the John Doe officers from the suit was not an abuse of discretion.

3.

Lastly, we conclude that the record fails to contain genuine issues of material fact on all of Moulds's constitutional claims, except for one -- his due process claim relating to the denial of witnesses. Summary judgment will be granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Sierminski, 216 F.3d at 949. "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. 'It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.'" Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported the motion, the burden shifts to the

5

nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 587.

In another prisoner's § 1983 case, we held that specific facts pled in a sworn complaint must be considered in opposition to summary judgment. Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986). However, sworn statements must be made on personal knowledge, and statements based in part upon information and belief cannot raise a genuine issue of fact. Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002) (citing Fed.R.Civ.P. 56(e)). Inadmissible hearsay generally cannot be considered on a summary judgment motion. Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 783 (11th Cir. 2004).

a. Failure to Protect

Prison officials "must provide humane conditions of confinement; [they] must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"

6

Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam) (quotations and alterations omitted).

We have held that "[t]o survive summary judgment on [a §] 1983, Eighth Amendment claim, [a plaintiff is] required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Id. (quotations, citations, and alterations omitted). "[M]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." Id. at 1350 (quotations and alteration omitted). "The known risk of injury must be a strong likelihood, rather than a mere possibility[,] before a guard's failure to act can constitute deliberate indifference." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (quotations omitted).

A substantial risk to a prisoner's safety may arise not only out of his individual situation, but out of an environment of longstanding and pervasive attacks to which all prisoners in his situation are exposed, and it may come from single or multiple sources. See Farmer, 511 U.S. at 842-43. Nevertheless, a defendant may avoid liability by showing that he was unaware of the underlying facts indicating a substantial risk, that he "believed (albeit unsoundly) that the risk

7

to which the facts gave rise was insubstantial or nonexistent," or that he "responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844. A plaintiff's failure to give advance notice to prison officials of a specific threat or of his fear of an inmate is relevant to this inquiry, see Carter, 352 F.3d at 1349-50, though it is not dispositive, see Farmer, 511 U.S. at 848.

Moulds has failed to support his claim that Correctional Officer Arthur spread false rumors to inmates labeling Moulds a snitch. Moulds's statement that he heard of Arthur's involvement from other inmates does not satisfy the "personal knowledge" requirement of Rule 56(e). Accordingly, the district court did not err in finding that no rational trier of fact could have found Arthur to have created, or been deliberately indifferent to, a substantial risk of serious harm to Moulds.

Moulds also has presented no evidence to support his assertions that Warden Bullard failed to investigate the source of the rumor and failed to classify properly the inmate who ultimately stabbed Moulds for his alleged snitching. Bullard concedes that he was aware of the potential safety hazards created by the general understaffing and overcrowding at Donaldson, but contends that he repeatedly tried to bring these conditions to Prison Commissioner Campbell's attention so the problems could be addressed. In addition, he contends that Moulds's unit was not understaffed or overcrowded at the time of the stabbing and that area, cell block,

8

and random searches were conducted on a daily basis. Moulds has not offered any evidence within his personal knowledge that would contradict Bullard's description of his efforts. Furthermore, even assuming that Bullard did not offer to move Moulds into protective administrative segregation before the stabbing, Moulds has not alleged facts indicating that this failure was an unreasonable response to what was known at the time about the potential risk to Moulds's safety. Thus, Moulds has not shown that a rational trier of fact could determine that Bullard was deliberately indifferent to a substantial risk of serious harm to Moulds.

Finally, it is undisputed that Campbell was made aware of the security conditions created by the general overcrowding and understaffing at Donaldson, and the defendants presented no evidence to support their position that Campbell tried to address these problems by seeking additional funding. Nevertheless, because the record does not indicate that Moulds's dormitory was overcrowded or understaffed at the time of the stabbing, Moulds cannot show that any possible indifference on Campbell's part was a cause of, or contributed to, the attack.

b.     Conditions of Confinement

The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer, 511 U.S. at 832. "But conditions that cannot be said to be cruel and unusual under

9

contemporary standards are not unconstitutional." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted). A prisoner challenging conditions of his confinement must show that: (1) the condition of which he complains "is sufficiently serious to violate the Eighth Amendment," and (2) the prison officials were deliberately indifferent to the condition at issue. Id. To satisfy prong one, the prisoner must show that the condition is "extreme" and "poses an unreasonable risk of serious damage to his future health or safety." Id. (quotations and alterations omitted).

As the record here shows, Moulds made a general claim that overcrowding at Donaldson led to unsanitary conditions, but he did not state any details that would indicate how "extreme" those conditions were, and did not contend that he personally faced a health risk as a result of any of these conditions. With respect to the conditions of his disciplinary segregation, Moulds failed to provide any details about the size and nutritional value of the meals he continued to receive or the severity of the hunger pangs and weight loss caused by the loss of his lunch meals. He also did not indicate that he required any sort of medical treatment or otherwise suggest that the denial of lunches posed an unreasonable risk of serious harm to his

10

future health. Finally, he failed to allege any actual or future serious harm caused by the loss of privileges or the denial of a mattress for part of each day. Thus, the district court did not err in finding that Moulds failed to demonstrate a potential Eighth Amendment violation with respect to the conditions of his confinement.

c.      Retaliation and Conspiracy to Retaliate

"We have explained that 'First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment.'" Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting Boxer X, 437 F.3d at 1112). "'To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech.'" Id. (quoting Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005)). The causation prong "asks whether the defendants were subjectively motivated" by the plaintiff's protected speech. Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008).

Yet "an inmate's First Amendment right to free speech is not protected if affording protection would be inconsistent with the inmate's status as a prisoner or

11

with the legitimate penological objectives of the corrections system." Id. at 1277.

"[I]f a prisoner violates a legitimate prison regulation, he is not engaged in protected conduct, and cannot proceed beyond step one." Id. (quotations omitted).

Because Moulds made only a bare assertion of a conspiracy to retaliate against him, without alleging any other details or providing any supporting evidence of such a conspiracy, the district court did not err in granting summary judgment on his conspiracy claim. See Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) (holding that a person alleging a conspiracy to violate constitutional rights must do more than simply aver that a conspiracy existed).

To the extent Moulds claims that the search of his cell was retaliation for his complaints about Arthur's alleged involvement in the false rumors about him, those complaints were protected speech. Nonetheless, the search occurred three to four months after he made his complaints, Arthur was not involved in the search, and Moulds presented no evidence that the complaints motivated any other officer's participation in the search. Therefore, the district court did not err in finding that Moulds had not demonstrated that a rational trier of fact could have found a causal connection between the two events.

To the extent he claims the search was retaliation for sending a note to a fellow inmate, in which he sought the inmate's testimony for the instant lawsuit,

the undisputed record evidence indicates that prisoners in segregation are not permitted to communicate with other prisoners. Moulds was in administrative segregation at the time. Because sending the note to the inmate violated a legitimate prison regulation, Moulds was "not engaged in protected conduct, and [he] cannot proceed beyond step one" of the analysis. Smith, 532 F.3d at 1277. Accordingly, the district court did not err in granting summary judgment to the defendants with respect to Moulds's retaliation claims.

### d.     Denial of Access to the Courts

"The Supreme Court has long held that 'prisoners have a constitutional right of access to the courts.'" Al-Amin v. Smith, 511 F.3d 1317, 1325 (11th Cir. 2008) (quoting Bounds v. Smith, 430 U.S. 817, 821 (1977)). However, a prisoner's "contentions of deprivations of access to courts must show actual injury as a 'constitutional prerequisite.'" Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)). A prisoner plaintiff alleging a violation of his right of access to the courts "must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." Id. "This essential standing requirement means that prison officials' actions . . . must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil

13

rights action. To prevail, a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Id. at 1290-91 (citations omitted). The plaintiff must be able to demonstrate that the officials' actions "hindered his efforts to proceed with [his] legal claim.'" Id. at 1291 (quotations omitted).

The legal materials seized from Moulds's cell were related to his claim against Arthur for allegedly spreading a false rumor about him. Moulds has not alleged that his ability to pursue that claim was impeded by the seizure, and the fact that he was able to file and prosecute the instant suit shows that he did not suffer actual injury. Thus, Moulds lacked standing to bring an access-to-courts claim and the district court did not err in granting summary judgment.

e.   Due Process -- Denial of Witnesses

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). "Chief among the due process minima outlined in Wolff was the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board." Ponte v. Real, 471 U.S. 491, 495 (1985). However, "the inmate's right to present witnesses is necessarily circumscribed by the penological need to provide swift discipline in

14

individual cases . . . [and] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." Id.

Accordingly, "the prisoner's right to call witnesses and present evidence in disciplinary hearings could be denied if granting the request would be 'unduly hazardous to institutional safety or correctional goals.'" Id. (quoting Wolff, 418 U.S. at 566). Because the prisoner is unlikely to know the officials' reasons for refusing to call his witnesses, he does not bear the burden of proving that the decision was arbitrary or capricious. Id. at 499. Rather, the

> prison officials may be required to explain . . . the reason why witnesses were not allowed to testify, . . . either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court . . . . [S]o long as the reasons are logically related to preventing undue hazards to "institutional safety or correctional goals," the explanation should meet the due process requirements as outlined in Wolff.

Id. at 497.

Under the Alabama Department of Corrections' administrative regulations, "[t]he inmate must be permitted to call a reasonable number of reasonably available witnesses to the hearing, normally no more than three (3) witnesses." Ala. Dep't of Corr. Admin. Reg. 403(II)(C). "At the time of service of charges . . . , the Serving Officer will advise the inmate of his/her right to call witnesses . . . . The Serving Officer will obtain those names at this time and will not refuse to list

15

any witnesses desired by the inmate." Reg. 403(III)(F). The Hearing Officer is responsible for determining whether the witnesses "could possibly" have relevant testimony and whether bringing the witnesses would pose a security threat. Id. The Hearing Officer is responsible for ensuring that inmates and employees to be called as witnesses attend the hearing. Id. "The Hearing Officer may refuse to allow any witness whose testimony is not relevant to testify." Id.

Construed in the light most favorable to Moulds, the evidence indicates that he repeatedly asked Barber (the Serving Officer), Eads (the Hearing Officer), Bullard, and Captain Richburg for his witnesses, both before and during his disciplinary hearing, but that Bullard and Richburg disregarded his requests and Barber and Eads wrote down that Moulds had not requested witnesses. None of the defendants has argued that the denial of witnesses was related to preventing undue hazards to institutional safety or correctional goals. See Ponte, 471 U.S. at 497. Furthermore, the record indicates that Moulds's desired witnesses had information relevant to his attempt to identify inmates who allegedly had heard Arthur spreading rumors about him, in which case their testimony would have been relevant to the charges that Moulds was defaming Arthur and bribing inmates to provide false testimony. Because Moulds alleged sufficient genuine issues of material fact, the district court erred in granting summary judgment on this claim.

16

f.    Due Process -- Disciplinary Confinement

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement," but that "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in Sandin v. Conner, 515 U.S. 472 . . . ."  Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005).  "After Sandin, . . . the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life."  Id. at 223 (quotations omitted).  Temporary withdrawal of visitation privileges for disciplinary purposes is "not a dramatic departure from accepted standards for conditions of confinement," but a claim of permanent or extended withdrawal of all visitation privileges "would present different considerations." Overton v. Bazzetta, 539 U.S. 126, 136-37 (2003).

As applied here, the conditions of Moulds's disciplinary confinement are not of constitutional dimensions.  His temporary loss of privileges does not rise to the level of a protected liberty interest.  See Overton, 539 U.S. at 136-37.  Although he was deprived of one meal per day, he has not alleged facts showing that his diet,

17

taken as a whole, was inadequate. He also alleged that he was deprived of a mattress for approximately half of each day, but he did not allege that he was not allowed to sleep on a mattress. Under the circumstances, particularly in proportion to the length of Moulds's sentence, the 201 days he spent in segregation and subject to these conditions did not constitute such a "dramatic departure" from ordinary prison life as to give rise to a protected liberty interest. See id. Accordingly, the district court did not err in denying this claim.

For the foregoing reasons, we reverse the judgment of the district court with respect to Moulds's due process claim arising out of the denial of witnesses at his disciplinary hearing, affirm in all other respects, and remand for further proceedings not inconsistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**