[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 13, 2011
JOHN LEY
CLERK

No. 10-14866
Non-Argument Calendar
_____

D.C. Docket No. 2:04-cv-03443-SLB-TMP

DANNY EUGENE MOULDS,

                                        Plaintiff-Appellant,

                        versus

STEPHEN BULLARD,
DONAL CAMPBELL,
JOHN ARTHUR,
SGT. RONALD CARTER,
ALPHONSO BARBER, et al.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 13, 2011)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Danny Eugene Moulds appeals pro se from the district court's grant of summary judgment in favor of Alabama prison officials in a civil rights case brought under 42 U.S.C. § 1983. In a prior appeal, this Court had affirmed the district court's grant of summary judgment, except as to Moulds's due process claim arising out of the denial of witnesses at a disciplinary hearing, for which the Court had reversed the district court and remanded for further proceedings. Moulds v. Bullard, 345 F. App'x 387 (11th Cir. 2009) (unpublished) ("Moulds I"). On remand, the defendants filed a second motion for summary judgment, arguing that this Court had misapplied the law to Moulds's claim, and the district court granted the motion. In so doing, the district court discussed the law-of-the-case doctrine, and held that the mandate in Moulds I on the issue of whether Moulds was denied procedural due process in violation of the Fourteenth Amendment was clearly erroneous and would work a manifest injustice. On appeal, Moulds argues that the district court erred on remand by disregarding the previously issued mandate. After thorough review, we affirm.

We review a district court's ruling on summary judgment, and a district court's application of the law-of-the-case doctrine, de novo. Rojas v. Florida, 285 F.3d 1339, 1341 (11th Cir. 2002); United States v. Bobo, 419 F.3d 1264, 1267 (11th Cir. 2005).

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

2

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). In making this determination, "all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." Rojas, 285 F.3d at 1341-42.

"Under the law of the case doctrine, both district courts and appellate courts are generally bound by a prior appellate decision in the same case." Alphamed, Inc. v. B. Braun Medical, Inc., 367 F.3d 1280, 1285-86 (11th Cir. 2004). "The law of the case doctrine, self-imposed by the courts, operates to create efficiency, finality and obedience within the judicial system." Litman v. Mass. Mut. Life Ins. Co., 825 F.2d 1506, 1511 (11th Cir. 1987). We have described the mandate rule as:

> simply an application of the law of the case doctrine to a specific set of facts. Accordingly, when acting under an appellate court's mandate, a district court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.

United States v. Amedeo, 487 F.3d 823, 830 (11th Cir. 2007) (quotation and citation omitted); see also Litman, 825 F.2d at 1510-11 (applying the mandate rule in the civil context).

We have recognized narrow exceptions to the law-of-the-case doctrine, and, by implication, the mandate rule, see Amedeo, 487 F.3d at 830, where: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." Joshi v. Fla. State Univ. Health Ctr., 763 F.2d 1227, 1231 (11th Cir. 1985) (quotation omitted). The clearly erroneous standard is met when "the legal error is beyond the scope of reasonable debate . . ." Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1370-71 (11th Cir. 2003). In addition, in Jenkins, we found a manifest injustice where an Alabama district court made a clearly erroneous finding that venue was proper in Alabama, and thus Alabama law would likely have been used to uphold a non-compete agreement that was contrary to the fundamental public policy of Georgia, where venue would have been proper. See id. at 1371-73. Thus, clear error presents a manifest injustice where the error would likely change the outcome of a case; and public policy concerns are relevant to a determination of manifest injustice. See id.

The Fourteenth Amendment prohibits any state from depriving a person of life, liberty, or property without due process of law. See U.S. Const. amend. XIV, sec. 1. "[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest;

4

(2) state action; and (3) constitutionally-inadequate process." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). The first question a court must answer with any procedural due process claim is whether the injury claimed by the plaintiff is within the scope of the Due Process Clause. See Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999). In Sandin v. Conner, the plaintiff claimed a deprivation of procedural due process in connection with a prison disciplinary hearing. 515 U.S. 472, 476 (1995). The Supreme Court in Sandin recognized that:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 483-84 (citations omitted); see also Magluta v. Samples, 375 F.3d 1269, 1282 (11th Cir. 2004) (recognizing a "new Sandin standard," under which there is "no liberty interest and no constitutional violation . . . if the Sandin 'atypical and significant hardship' standard [is] not met."). The Supreme Court ultimately held that the plaintiff's disciplinary confinement for 30 days was not an atypical or significant hardship in comparison to ordinary conditions in the Hawaii prison system, and did not inevitably increase the duration of the plaintiff's sentence, so the confinement did not give rise to a protected liberty interest. Sandin, 515 U.S. at 485-87. Because

5

there was no liberty interest at stake, procedural due process was not implicated. See id. at 487 ("We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded [the plaintiff] a protected liberty interest that would entitle him to the procedural protections set forth in Wolff.").

In Wolff v. McDonnell, the Supreme Court held that a prisoner had a protected liberty interest in statutory good-time credits, and thus had a constitutional right to procedural due process in a disciplinary hearing that threatened that interest. 418 U.S. 539, 555-58 (1974). Under Wolff, a prisoner facing a disciplinary hearing that may result in the loss of a liberty interest must receive: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action. Id. at 563-67. In Ponte v. Real, the Supreme Court expanded on what was required, under the Due Process Clause, if prison officials refused to call an inmate's requested witnesses at a disciplinary hearing. See 471 U.S. 491, 492 (1985). In Ponte, it was undisputed that the plaintiff possessed a liberty interest in good-time credits, such that the interest could not be taken from him without procedural due process. Id. at 495.

In this case, the district court did not err in granting the defendants' motion for summary judgment. Indeed, <u>Moulds I</u> held that Moulds's punishment -- temporary loss of privileges and disciplinary confinement -- did not constitute the deprivation of a constitutionally protected liberty interest, yet <u>also</u> held that Moulds's procedural due process rights may have been violated by the disciplinary hearing that led to the imposition of that punishment. 345 F. App'x 387, at *7. However, Moulds would only be constitutionally entitled to procedural due process if he were deprived of a protected liberty interest, <u>see, e.g.</u>, <u>Sandin</u>, 515 U.S. at 487; <u>see also</u> <u>Bass</u>, 170 F.3d at 1318; <u>see also</u> <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005) (noting that it "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest . . .."), and we are precluded, by the law-of-the-case established in <u>Moulds I</u>, from finding that Moulds's disciplinary confinement deprived Moulds of a constitutionally protected liberty interest, unless one of the <u>Joshi</u> exceptions to the law-of-the-case doctrine applies. <u>See</u> <u>Joshi</u>, 763 F.2d at 1231. Because no new trial was held after <u>Moulds I</u>, and because Moulds has failed to show that subsequent precedent contradicts <u>Moulds I</u> or that its holding -- that his disciplinary confinement was not the deprivation of a protected liberty interest -- was clearly erroneous, none of the <u>Joshi</u> exceptions apply. <u>See</u> <u>Sandin</u>, 515 U.S. at 484-87 (holding that 30 days of disciplinary segregation did not give rise to

7

a protected liberty interest); Overton v. Bazzetta, 539 U.S. 126, 136-37 (2003) (providing that temporary withdrawal of visitation privileges for disciplinary purposes was "not a dramatic departure from accepted standards for conditions of confinement"); Rodgers v. Singletary, 142 F.3d 1252, 1252-53 (11th Cir. 1998) (holding that two months of administrative confinement did not implicate a protected liberty interest). Thus, there was no protected liberty interest at stake, and as a result, Moulds was not entitled to procedural due process during his disciplinary hearing. See, e.g., Sandin, 515 U.S. at 487; Bass, 170 F.3d at 1318; Wilkinson, 545 U.S. at 221.[1] Accordingly, Moulds I was clearly erroneous in remanding the case for further proceedings on the issue of whether Moulds was deprived of procedural due process when his witnesses were not called at his disciplinary hearing.

Moreover, this case presents a situation where following the mandate in Moulds I would result in manifest injustice. As discussed above, because the defendants did not deprive Moulds of a protected liberty interest, they could not

---

[1] Moulds I did not identify any other potential liberty interest that might have been at stake at Moulds's disciplinary hearing, and Moulds was required to show not just a violation of a state statute or regulation, but a violation of a protected liberty interest. See Sandin, 515 U.S. at 483-84 ("States may . . . create liberty interests which are protected by the Due Process Clause . . . . But these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate . . ."); see also Magluta, 375 F.3d at 1282 ("There would be no liberty interest and no constitutional violation . . . if the Sandin 'atypical and significant hardship' standard were not met."). Additionally, Moulds never alleged that he was deprived of good-time credits. Compare Wolff, 418 U.S. at 555-58; Ponte, 471 U.S. at 495.

8

violate his procedural due process rights. Accordingly, they should have been granted summary judgment on Moulds's claim that they violated his due process rights by denying him witnesses. However, if Moulds I is followed, the defendants could be found liable for violating Moulds's due process rights, despite the fact that they did not deprive Moulds of a protected liberty interest. Thus, the clear error in Moulds I could affect the case's outcome. See Jenkins, 321 F.3d at 1371-73. At the least, the defendants here will have to defend against litigation for which they legally should not be held liable. Additionally, other potential defendants, such as the Alabama Department of Corrections, would be put in the position of needing to guarantee procedural due process rights for prisoners, even in situations where those prisoners are not deprived of protected liberty interests. See id.

Because the clear error in Moulds I would work a manifest injustice, the district court properly found that an exception to the mandate rule applied, and that it was therefore not bound to follow the mandate. See Joshi, 763 F.2d at 1231; Amedeo, 487 F.3d at 830. Accordingly, we affirm.

**AFFIRMED.**

9