**Benjamin WHITFIELD, Plaintiff,**

v.

**David THOMPSON, et al., Defendants.**

**Case Number: 13–22379–MARTINEZ–WHITE**

United States District Court,
S.D. Florida,
Miami Division.

Signed 02/24/2016

Entered 02/25/2016

Benjamin Whitfield, Perry, FL, pro se.

Bernard Pastor, Ana Angelica Viciana, James J. Allen, Miami, FL, for Defendants.

### *ORDER ADOPTING MAGISTRATE JUDGE WHITE'S REPORT AND RECOMMENDATION*

JOSE E. MARTINEZ, UNITED STATES DISTRICT JUDGE

THE MATTER was referred to the Honorable Patrick A. White, United States Magistrate Judge, for a Report and Recommendation on Plaintiff's civil rights complaint, filed pursuant to 42 U.S.C. § 1983. Judge White filed a Report and Recommendation [ECF No. 88], recommending that Defendants' Motion for Summary Judgment [ECF No. 71] be granted and that final judgment be entered in favor of all Defendants. The Court has reviewed the entire file and record and notes that no objections to the Magistrate Judge's Report and Recommendation have been filed. After careful consideration, the Court affirms and adopts the Report

and Recommendation. Accordingly, it is hereby:

**ADJUDGED** that United States Magistrate Judge White's Report and Recommendation [ECF No. 88] is **AFFIRMED** and **ADOPTED**. Accordingly, it is **ADJUDGED** that Defendants' Motion for Summary Judgment [ECF No. 71] is **GRANTED**. This case is **CLOSED,** and any pending motions are **DENIED AS MOOT.** A final judgment shall be entered by separate order.

DONE AND ORDERED in Chambers at Miami, Florida, this 24 day of February, 2016.

## REPORT OF MAGISTRATE JUDGE

P.A. White, UNITED STATES MAGISTRATE JUDGE

### I. Introduction and Background

Benjamin Whitfield, a convicted state felon currently confined in Taylor Correctional Institution, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 while confined at Hamilton Correctional Institution in Jasper, Florida. *See* Complaint (DE# 1–2). Plaintiff names as defendants in his complaint: Officer David Thompson, Officer Aida Wilson, and Corporal Laroxsha Williams, corrections officers employed by Miami–Dade County Corrections and Rehabilitation Department at the Metro West Detention Center. *Id.* He also names as defendants Mario Mothersil and Elizabeth Fernandez, counselors employed by Miami–Dade County Corrections and Rehabilitation Department at the Metro West Detention Center. *Id.*

As to Defendant Thompson, Whitfield claims that this defendant denied him access to the courts in violation of his First Amendment rights. *See* Complaint at ¶¶ 10–13. (DE# 1–2). He alleges that on January 16, 2013, Defendant Thompson and another officer came to Okeechobee Correctional Institution, where he was then confined, to transport him to Miami–Dade County Corrections and Rehabilitation Department for his then-upcoming trial scheduled for January 28, 2013. *Id.* Plaintiff alleges that he was not permitted to take with him various legal documents pertaining to his criminal and civil cases even after he informed Defendant Thompson that he was a *pro se* litigant in those cases. *Id.* According to Plaintiff, Defendant's actions in denying him the needed legal materials resulted in the dismissal of one of the civil cases he was then pursuing in this Court, because he had been unable to file a change of address and file a timely Amended Complaint. *Id.* He further alleges that his inability to refer to his legal documents from January 16 to March 20, 2013, in his then-active cases, caused him to file unnecessary motions for extension of time and premature responses in the United States Tax Court and a Florida appellate court. *Id.* at ¶¶ 6–7, 40–42.

As to the Defendant Wilson, Plaintiff claims that this defendant violated his First Amendment rights in that she retaliated against him for pursuing grievances against her and that defendant Williams violated his due process rights in connection with the disciplinary proceedings. *Id.* at ¶¶ 16–28, 48–50. Plaintiff alleges that while confined at the Metro West Detention Facility on February 23, 2013, he wrote two grievances against defendant Wilson, and two days later he wrote complaints to internal affairs about Defendant Wilson. *Id.* at ¶¶ 16–17. Plaintiff contends that, a few days later, on February 28, 2013, Defendant Wilson retaliated against him by filing a frivolous Disciplinary Report, charging him with possession of stolen property. *Id.* at ¶¶ 18, 56. The same date, Defendants Wilson and Williams placed him in a holding cell and then commenced a partial investigation into the charge set out in the disciplinary report. *Id.* at ¶¶ 20, 48. Plaintiff states that he provided a written statement to

the officers and he named certain inmates and staff as witnesses regarding the subject incident. *Id.* at ¶ 21. Plaintiff alleges that Defendant Williams denied him the right to present witnesses in his defense in that she refused to interview the witnesses provided and told him that the witnesses would need to contact her. *Id.* at ¶¶ 22, 48, 50. Plaintiff also alleges that he was never provided with full notice of the frivolous allegations against him. *Id.*

Plaintiff goes on to allege that later that same day, February 28, 2013, Defendant Williams requested that he return to her his copy of the disciplinary report, which he did. *Id.* at ¶ 25. He was then provided with a substitute disciplinary report titled, "Loaning of Property of Another or Anything of Value Increase," also authored by Defendant Wilson. *Id.* According to Plaintiff, the substituted disciplinary report had been prepared after the investigation had started into the charge made in the initial disciplinary report and after he had provided a written statement to that charge. *Id.* at ¶ 26. Plaintiff states yet a third disciplinary report was prepared on February 28, 2013, this time charging him with lying or providing false statements to corrections staff. *Id.* at ¶ 27. Plaintiff claims that this second disciplinary report prepared by Defendant Wilson was also false and made in retaliation for his having filed grievances against the defendant. *Id.* at ¶ 56. Plaintiff states that he refused to sign the two new disciplinary reports. *Id.* at ¶ 28. Plaintiff maintains that the disciplinary reports were false and written to discourage his from exercising his right to pursue his grievances against Defendant Wilson. *Id.* at ¶¶ 58, 59.

As to defendants Mothersil and Fernandez, Plaintiff alleges that they violated his due process rights in connection with the disciplinary hearings conducted on the substituted and second disciplinary reports. *Id.* at ¶¶ 31–38. Plaintiff claims that he requested these defendants to postpone the disciplinary hearings so that he could obtain statements from the witnesses listed in his statement to the initial disciplinary report, and they refused to do so. *Id.* at ¶¶ 30, 64. Plaintiff alleges that these two defendants informed him that he had no right to call witnesses at his disciplinary hearing. *Id.* at ¶¶ 31, 32. Plaintiff was found guilty as charged in a hearing held on March 5, 2013. *Id.* Plaintiff alleges that the defendants were not fair and impartial fact finders and he was sentenced to twenty days' disciplinary confinement in violation of his constitutional rights. *Id.* at ¶¶ 32, 64. Plaintiff further alleges that Defendant Mothersil told him that he had no right to take an appeal from the disciplinary team's finding. *Id.* at ¶ 24. He also maintains that he was not provided with a copy of the written findings until fourteen days after the hearing and only after he had submitted a grievance, requesting a copy. *Id.* at 35. The copy of the findings revealed that he had additionally lost his visitation privileges for a thirty-day period and the team recommended that he be transferred from the Metro West detention facility as a sanction for lying. *Id.* at ¶¶ 36, 37.

Plaintiff asserts that he exhausted available grievance procedures. *Id.* at ¶ 68. He seeks compensatory damages in the amount of $60,000.00 from each defendant, punitive damages in the amount of $100,000.00 from each defendant, and any additional relief that this Court deems just, proper and equitable. *Id.* at ¶¶ 71–75.

The complaint was initially filed on May 29, 2013, in the Circuit Court of the Eleventh Judicial Circuit of Florida at Miami–Dade County, assigned Case No. 13–19043CA25. (DE# 1–2). On July 5, 2013, pursuant to 28 U.S.C. §§ 1441(a) and (b) and 1446, Defendants Williams and

Thompson filed a Notice of Removal and removed the action to this Court. *See* Miami–Dade Corrections & Rehab. Department's Notice of Removal. (DE# 1). The defendants paid the $400.00 removal fee. *Id.* On July 29, 2013, all named defendants filed a joint amended motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defendants Williams, Wilson, Mothersil, and Fernandez's Amended Motion to Dismiss Plaintiff's Complaint. (DE# 8). The defendants argued that the Plaintiff's Complaint should be dismissed, because (1) Plaintiff is subject to the "three strikes rule" pursuant to 28 U.S.C. § 1915(g); (2) the Plaintiff failed to allege that he had suffered a physical injury as required by 28 U.S.C. § 1997e(e); (3) the Complaint failed to state a claim upon which relief could be granted as to any defendant; and (3) they are entitled to qualified immunity. *Id.*

The Honorable Chris McAliley, United States Magistrate Judge, entered a Report, recommending that the Motion to Dismiss be dismissed without prejudice as to Defendant Thompson due to Plaintiff's failure to serve Defendant Thompson. *See* Report and Recommendation entered on November 22, 2013, at 2–4, 20. (DE# 23). All other arguments were rejected, and it was recommended that the amended motion to dismiss be denied. *Id.* at 5–20. The Honorable Jose E. Martinez, United States District Judge, adopted the Report and recommendations. *See* Order Adopting Magistrate Judge McAliley's Report and Recommendation entered on March 7, 2014. (DE# 28). After service of process had been accomplished upon all defendants, the defendants filed an Answer. *See* DE# 32, 41, 42. The Cause is now before the Court upon the Defendants' Motion for Summary Judgment and Statement of Material Facts. (DE# 71, 72). The motion is supported by various exhibits which include copies of proceedings in this Court, copies of disciplinary reports, and sworn affidavits. (DE# 72–1, 72–2— 72–19).

Plaintiff was advised of the Defendants' Motion for Summary Judgment and that, regardless of his *pro se* status, he was required to file a response opposing the motion for summary judgment with competent evidence, such as affidavits, deposition testimony, etc. *See* DE# 73. Plaintiff was expressly advised that mere argument and rhetoric or repeating the allegations of the complaint would not be sufficient to prevail against an otherwise legitimate summary judgment motion. *Id.*

Whitfield filed a response to Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 with a Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment and supporting exhibits, which include documentary exhibits and affidavits. (DE# 82, 83, 84). Defendants have filed a reply. (DE# 87). After careful consideration, and for the reasons that follow, Defendants' Motion for Summary Judgment should be granted and the case dismissed with prejudice as to all defendants.

## II. *The Law of Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56,[1] a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b).

---

1. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

 [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of a law.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Greenberg v. Bell-South Telecomm., Inc.,* 498 F.3d 1258, 1263 (11th Cir.2007) (*per curiam*); Fed. R. Civ. P. 56(c). In accordance with *Celotex* and its progeny,[2] a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion, and identifying those portions of the record, including pleadings, discovery material, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

The United States Supreme Court has emphasized that at the summary judgment stage, the court's function is "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton,* —— U.S. ——, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986))(internal quotation marks omitted). Thus, this Court must take due care to credit contradicting evidence in favor of the Plaintiff and draw evidentiary inferences in favor of the Plaintiff as the non-moving party. Thus, when applying this applicable standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988)

The movant may meet his or her burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322–324, 106 S.Ct. 2548. If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.), *cert. denied,* 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992). This demonstration need not be accompanied by affidavits, however. *Hoffman v. Allied Corp.,* 912 F.2d 1379, 1382 (11th Cir.1990). The non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

**2.** In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court held that summary judgment should be entered against:

> [A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed, to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (Citation omitted).

### III. *Discussion*

The defendants have filed a joint Motion for Summary Judgment, arguing that they are entitled to judgment as a matter of law because (1) Plaintiff has failed to satisfy the physical injury requirement of 42 U.S.C. § 1997e(e); (2) Plaintiff fails to state a claim for denial of access to the courts as to defendant Thompson; (3) Plaintiff fails to state a claim for retaliation as to defendant Wilson; (4) Plaintiff has not demonstrated that his due process rights were violated by defendants Williams, Mothersil and Fernandez; and (5) they are entitled to an award of qualified immunity. *See* Defendants' Motion for Summary Judgment; Defendants' Statement of Material Facts in Support of Motion for Summary Judgment and supporting exhibits. (DE# 71, 72). As indicated, Plaintiff has filed a response in opposition with supporting exhibits. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment, Plaintiff's Statement of Material Facts in Opposition, Exhibits (DE# 82, 83, 84). The defendants have filed a Reply. (DE# 87).

### A. *42 U.S.C. § 1997e (e)*

Defendants first argue that the Complaint should be dismissed in its entirety, because Plaintiff has failed to allege that he suffered from a physical injury as a result of the alleged constitutional violations. *See* Motion for Summary Judgment at 3–6. (DE# 71). Plaintiff has responded that he is entitled to "presumed damages" for the alleged harm caused by the defendants. *See* Response to Motion for Summary Judgment at 3–4, *citing, Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 310–11, 106 S.Ct. 2537, 2545, 91 L.Ed.2d 249 (1986)(stating that "[w]hen a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish, some form of presumed damages may possibly be appropriate."). (DE# 82).

### 1. *Applicable Law*

Congress has placed various restrictions on the ability of prisoners to seek judicial relief and the form such relief may take and among these restrictions is 42 U.S.C. § 1997e(e). No 42 U.S.C. § 1983 action "may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e); *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312–13 (11th Cir.2002)(stating that "to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis* "); *Harris v. Garner,* 190 F.3d 1279, 1288 (11th Cir.1999) (finding that the Constitution does not "mandate[ ] a tort damages remedy for every claimed constitutional violation"), *opinion vacated by* 197 F.3d 1059, *opinion reinstated in part by* 216 F.3d 970 (11th Cir.2000). *See also Al–Amin v. Smith,* 637 F.3d 1192, 1198 (11th Cir.2011) (holding that "punitive damages cannot be recovered for claims—constitutional or otherwise—that do not meet § 1997e(e)'s physical injury requirement."); *Hale v. Sec'y for Dep't of Corr.,* 345 Fed.Appx. 489, 492 (11th Cir.2009) (finding that § 1997e(e) precludes a prisoner from seeking compensatory or punitive damages without a prior showing of physical injury). Here, Plaintiff has not shown that he suffered a physical injury as a result of his alleged constitutional violations; therefore, he cannot recover compensatory or punitive damages.

While § 1997e(e) bars suits by prisoners who have not alleged a physical injury from seeking compensatory or punitive damages, it does not preclude a prisoner from seeking only nominal damages. It has long been recognized by the Supreme

Court and the Eleventh Circuit that nominal damages serve to "vindicate[ ] deprivations of certain 'absolute' rights that are not shown to have caused actual injury." *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Brooks v. Warden*, 800 F.3d 1295, 1308 (11th Cir. 2015), *citing, Stachura*, 477 U.S. 299, 308 n. 11, 106 S.Ct. 2537 ("[N]ominal damages ... are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury...."); *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir.2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."). *See also Hale*, 345 Fed.Appx. at 492 (stating that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages.") (citation omitted); *Williams v. Langford*, 2015 WL 163226, *7 (M.D.Fla. Jan. 12, 2015), *citing, Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir.2003); *Nix v. Carter*, 2013 WL 432566, at *2 (M.D.Ga. Feb. 1, 2013)("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages.").

■ Moreover, more pertinent to this case, a district court may award nominal damages to remedy a First Amendment violation. *Id., citing, Pelphrey v. Cobb County, Ga.*, 547 F.3d 1263, 1282 (11th Cir.2008)("This Court has found that 'nominal damages are similarly appropriate in the context of a First Amendment violation.'") (citation omitted)); *Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th

Cir.1980) (holding that an award of nominal damages upon proof of infringement of a fundamental First Amendment violation is required).[3] The same is true for a claim of retaliation and a due process violation. *Hoever v. Carraway*, 2015 WL 737272, *7 (N.D.Fla. Feb. 20, 2015). *See also Carey*, 435 U.S. at 266–67, 98 S.Ct. at 1053–54 (holding that absent actual injury, deprivation of a due process right is actionable for nominal damages, which should not exceed one dollar); *Caban–Wheeler v. Elsea*, 71 F.3d 837, 841–42 (11th Cir.1996) (holding where jury expressly found plaintiff's suffered due process violation it was not error for court to award nominal damages).

### 2. *Analysis*

■ Plaintiff has been allowed to proceed based on his First Amendment and due process claims. Review of Plaintiff's Complaint reveals that he alleges no physical injury as a result of the alleged constitutional violations. *See* Complaint at ¶¶ 42–43, 50, 58–59, 64. (DE# 1–2). Therefore, he is barred by the PLRA from an award of compensatory and punitive damages, which he seeks, if he were to be successful in this § 1983 action. *Id.* at ¶¶ 71, 72. In his Complaint, however, Plaintiff asks for "[a]ny additional relief this Court deem[s] just, proper, and equitable." *Id.* at ¶ 75. The undersigned liberally construes the request as one for nominal damages. *See Holloway v. Bizzaro*, 571 F.Supp.2d 1270, 1272 (S.D.Fla.2008)("Complaints which have been liberally construed to raise a request for nominal damages or equitable relief contain such phrases as 'such other relief as may appear that Plaintiff is entitled' or similar language."); *Hoever*, 2015 WL 737272, at *7. Thus, if Plaintiff were to

**3.** The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v.* *City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981)(en banc).

prevail in this action, he would be entitled relief solely in the form of nominal damages despite his failure to allege a physical injury.[4] Accordingly, Defendants are not entitled to dismissal of this action, on this ground. However, because Plaintiff is unable to demonstrate that any of the defendants violated his constitutional rights for the reasons that follow, an award of summary judgment is warranted for the defendants on an alternate basis.

### B. Denial of Access to the Courts

Defendant Thompson argues that he is entitled to an award of summary judgment, because Plaintiff has failed to state a claim for denial of access to the courts. See Motion for Summary Judgment at 6–11. (DE# 71). More specifically, the defendant maintains that Plaintiff has not established an actual injury arising from the denial of meaningful access to the courts, Plaintiff was not pursuing a claim protected by the right of access to the courts during the subject time period, and Plaintiff cannot establish that Defendant Thompson's actions resulted in denial of access to the courts. Id. Plaintiff has responded that he has demonstrated a denial of access to the courts in that he missed a deadline to file an amended complaint in Whitfield v. O'Neal, No. 12–21084–Civ–Martinez. See Response to Motion for Summary Judgment at 4–6. (DE# 82).

### 1. Applicable Law

■■■ It is well-established that prisoners have a constitutional right of access to the courts" under the Due Process Clause,

and that access must be "adequate, effective, and meaningful." Bounds v. Smith, 430 U.S. 817, 821, 822, 97 S.Ct. 1491, 1494, 1495, 52 L.Ed.2d 72 (1977). A litigant asserting an access claim must prove that he has a colorable underlying claim for which he seeks relief. Alvarez v. Attorney General for Fla., 679 F.3d 1257, 1265–66 (11th Cir.2012), quoting, Barbour v. Haley, 471 F.3d 1222, 1226 (11th Cir.2006). See also Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 2186–87, 153 L.Ed.2d 413 (2002)(recognizing that the right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"). Also, in order to establish a violation of the right of access to the courts, a prisoner must show an actual injury which requirement derives from the constitutional doctrine of standing. See Lewis v. Casey, 518 U.S. 343, 349, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996). The Eleventh Circuit has held that "the inmate must show that this inability [to access the courts] caused an actual harm, or in other words, unconstitutionally prevented him from exercising that fundamental right of access to the courts in order to attack his sentence or to challenge the conditions of his confinement." Akins v. United States, 204 F.3d 1086, 1090 (11th Cir.2000).

Stated differently, the Eleventh Circuit has explained that "[t]he injury requirement reflects the fact that 'the very point of recognizing any access claim is to provide some effective vindication for a sepa-

---

**4.** The undersigned points out that nominal damages do not generally exceed one dollar. See Carey v. Piphus, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)(holding if plaintiffs were entitled to nominal damages for the mere violation, the damages should not exceed one dollar); Kyle v. Patterson, 196 F.3d 695, 697 (7th Cir.1999)("[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose

deprivation has not caused actual, provable injury."); Familias Unidas, 619 F.3d at 402–02 (holding that Plaintiff was entitled to receive nominal damages, not to exceed one dollar, based on the infringement of her First Amendment right of association); Harrison v. Myers, 2011 WL 3204372, *7 (S.D.Ala. July 13, 2011)(prisoner's request of $2,500 was not for nominal damages inasmuch as nominal damages implies a mere token or trifling).

rate and distinct right to seek judicial relief for some wrong.'" *Cunningham v. District Attorney's Office for Escambia County,* 592 F.3d 1237, 1271 (11th Cir.2010)(*quoting, Christopher,* 536 U.S. at 414–15, 122 S.Ct. at 2186). The Eleventh Circuit went on to state in *Cunningham* that the "injury requirement means that the plaintiff must have an underlying cause of action the vindication of which is prevented by the denial of access to the courts." *Id., citing, Christopher,* 536 U.S. at 415, 122 S.Ct. at 2187 ("[T]he underlying cause of action ... is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.").

### 2. Undisputed Material Facts

The undisputed facts pertaining to the denial of access claim, as revealed by thorough review of the record and records of which this Court can take judicial notice,[5] are as follow. On January 16, 2013, Plaintiff was transported from Okeechobee Correctional Institution to the Metro West Correctional Center in Miami–Dade County, Florida. *See* Complaint at ¶ 10. (DE# 1–2). *See also* Letter from Whitfield to Clerk, United States District Court, Southern District of Florida dated February 11, 2013, filed in *Whitfield v. O'Neal,* No. 12–21084–Civ–Martinez at DE# 36. (Ex. 1 to Plaintiff's Response to Defendants' Motion for Summary Judgment) (DE# 84). Plaintiff was transported by Corrections Officer David Thompson and a second officer. *Id.* The transporting officers denied Plaintiff's request to take his legal materials with him, therefore, he did not have his legal documents between January 16, 2013, and March 20, 2013.

*See* Complaint at ¶ 10. (DE# 1–2); Letter from B.E. Cowart, Assistant Warden Operations to Whitfield dated February 26, 2013 (Exhibit 13 to Plaintiff's Response to Motion for Summary Judgment) (DE# 84).

Before his transfer, Plaintiff filed on January 18, 2012, a complaint against Herman O'Neal and other Miami–Dade County employees regarding an automobile accident that occurred while Plaintiff was being transported in 2010. *See* Complaint filed in *Whitfield v. O'Neal,* No. 12–21084–Civ–Martinez. (Ex. 3 to Defendants' Motion for Summary Judgment)(DE# 72–3). Plaintiff raised claims pursuant to 42 U.S.C. § 1983, negligence, and leaving the scene of an accident in violation of a Florida statute. *Id.* The case was originally filed in Miami–Dade County Circuit Court and was subsequently removed to this Court on March 16, 2012, and assigned Case Number 12–21084–Civ–Martinez. *Id. See also* Docket Sheet, Case No. 12–21084–Civ–Martinez. (Exhibit 4 to Defendants' Motion for Summary Judgment)(DE# 72–4).

The defendants in Case No. 12–21084–Civ–Martinez filed a motion to dismiss and on October 29, 2012, Magistrate Judge Chris McAliley entered a Report, recommending that certain of Plaintiff's claims be dismissed with prejudice and others dismissed without prejudice. *See* Report and Recommendation on Motions to Dismiss. (Ex. 5 to Defendants' Motion for Summary Judgment) (DE# 72–5). After Plaintiff had filed objections to the Report, Judge Martinez entered an order on January 31, 2013, adopting the Report and dismissing Plaintiff's claims, but permit-

---

**5.** This Court will take judicial notice of its own records in Whitfield's prior civil rights cases filed in this Court: Case Nos. 12–21084–Civ–Martinez and 13–22373–Civ–Altonaga. *See* Fed. R. Evid. 201(b) and (c) (indicating that the Court may take judicial notice on its own of a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."). *See also United States v. Glover,* 179 F.3d 1300, 1302 n. 5 (11th Cir.1999) ("A court may take judicial notice of its own records and the records of inferior courts.").

ting Plaintiff to file an amended complaint on or before February 20, 2013. *See* Docket Sheet, Case No. 12–21084–Civ–Martinez; Order Adopting Magistrate Judge McAliley's Report and Recommendation. (Ex. 4 and 6 to Defendants' Motion for Summary Judgment) (DE# 72–4, 72–6). On February 22, 2013, Judge Martinez entered an Order dismissing the action without prejudice. *See* Docket Sheet, Case No. 12–21084–Civ–Martinez; Final Order of Dismissal Without Prejudice and Order Denying All Pending Motions as Moot. (Ex. 4 and 7 to Defendants' Motion for Summary Judgment) (DE# 72–4, 72–7). The Order was returned to this Court as undeliverable. *See* Docket Sheet, Case No. 12–21084–Civ–Martinez. (Ex. 4 to Defendants' Motion for Summary Judgment)(DE# 72–4).

On March 11, 2013, Whitfield filed a motion to reopen the case and for an extension of time to file an amended complaint. *Id.* On the same date, Whitfield filed a Notice of Change of Address and his address was updated on this Court's online docket. *Id.* Whitfield was ultimately permitted to reopen the case and file an Amended Complaint, which he did on July 8, 2013. *Id.* The defendants filed a motion to dismiss and on March 23, 2015, the undersigned entered a Report in Case No. 12–21084–Civ–Martinez, recommending that the defendants' motion to dismiss be granted in that Plaintiff had failed to state a cognizable claim for relief under § 1983. *See* Report of Magistrate Judge. (Exhibit 10 to Defendants' Motion for Summary Judgment)(DE# 72–10). It was further recommended that the pendant state law claims be dismissed and that the case be closed. *Id.* After Plaintiff had filed objections to the Report, Judge Martinez entered an order on April 10, 2015, adopting the Report and closing the case. *See* Docket Sheet, Case No. 12–21084–Civ–Martinez. (Ex. 4 to Defendants' Motion for Summary Judgment)(DE# 72–4). Plain-

tiff's motion to alter or amend the judgment was denied on April 29, 2015. *Id.*

Before Plaintiff had been permitted to file his Amended Complaint in Case No. 12–21084–Civ–Martinez, he filed on May 29, 2013, a new case reasserting the same claims raised in Case No. 12–21084. *See* Complaint filed in *Whitfield v. O'Neal,* No. 13–22373–Civ–Altonaga. (Ex. 8 to Defendants' Motion for Summary Judgment) (DE# 72–8). The case was also originally filed in the Miami–Dade County Circuit Court and was removed to this Court by the defendants on July 5, 2013, and assigned Case Number 13–22373–Civ–Altonaga. *Id. See also* Docket Sheet, Case No. 13–22373–Civ–Altonaga. (Exhibit 9 to Defendants' Motion for Summary Judgment) (DE# 72–9). The defendants filed on July 5, 2013, a Notice of Pendency of Other Action. *See* Docket Sheet, Case No. 13–22373–Civ–Altonaga. (Exhibit 9 to Defendants' Motion for Summary Judgment) (DE# 72–9). On July 18, 2013, the case was dismissed based on Plaintiff's motion for voluntarily dismissal. *Id.*

### 3. *Analysis*

When reviewing the evidence in the record in the light most favorable to Plaintiff, the undersigned finds that due to the actions of defendant Thompson and another officer, Whitfield was deprived of his legal materials for a period of approximately two months. During that time period, Whitfield was pursuing relief in the state trial court and then this Court once his actions had been removed to this Court. Even with these findings, review of the undisputed material facts nonetheless reveals that Defendant Thompson is entitled to an award of summary judgment in his favor since the defendant's actions did not violate Whitfield's constitutional rights.

First, Defendant Thompson correctly asserts that Plaintiff has failed to demon-

strate that he had a colorable underlying claim for which he sought relief, a prerequisite for establishing a denial of access to the courts claim. *Alvarez,* 679 F.3d at 1265–66. *See also Christopher,* 536 U.S. at 415, 122 S.Ct. 2179. As indicated above, in *Whitfield v. O'Neal,* No. 12–21084–Civ–Martinez, Plaintiff essentially asserted various tort claims against several corrections officers for a car accident that occurred while Plaintiff was being transported. *See* Complaint filed in Case No. 13–22373. (Ex. 8 to Defendant's Motion for Summary Judgment)(DE# 72–8). Plaintiff's Eighth Amendment claims against Defendants O'Neal and Nelson were dismissed by this Court on the basis that Plaintiff had failed to present a cognizable constitutional claim pursuant to 42 U.S.C. § 1983. *See* Report of Magistrate Judge; Docket Sheet, Case No. 12–21084–Civ–Martinez. (Ex. 4, 10 to Defendants' Motion for Summary Judgment)(DE# 72–4, 72–10). Because there was no viable constitutional claim, the pendant state law claims were also dismissed and the case was closed. *Id.* Plaintiff's subsequent case in this Court, *Whitfield v. O'Neal,* No. 13–22373–Civ–Altonaga, was voluntarily dismissed on Plaintiff's motion. *See* Docket Sheet, Case No. 13–22373–Civ–Altonaga. (Exhibit 9 to Defendants' Motion for Summary Judgment)(DE# 72–9).

Thus, Plaintiff did not have a colorable underlying claim for which he sought relief. His claims were, therefore, not the type of claims protected by the right of access to the courts. *Cunningham,* 592 F.3d at 1237; *Akins,* 204 F.3d at 1090. *See also Christopher,* 536 U.S. at 415, 122 S.Ct. at 2187; *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606.

■ Further, Plaintiff cannot show an actual injury. He attempts to show actual injury by claiming that he was required to file unnecessary motions for extensions of time and premature responses in his prior actions. He also alleges his right of access to courts was violated because he missed this Court's deadline to file an Amended Complaint. The records show that Plaintiff was not denied relief on any claim or that he suffered dismissal of any action as a result of his inability to access his legal materials.

Case No. 12–21084–Civ–Martinez was dismissed on February 22, 2013, a time when Whitfield was not in possession of his legal materials. *See* Docket Sheet, Case No. 12–21084–Civ–Martinez; Final Order of Dismissal Without Prejudice and Order Denying All Pending Motions as Moot. (Ex. 4 and 7 to Defendants' Motion for Summary Judgment) (DE# 72–4, 72–7). However, the dismissal was without prejudice. *See* Docket Sheet, Case No. 12–21084–Civ–Martinez. (Ex. 4 to Defendants' Motion for Summary Judgment)(DE# 72–4). Despite Whitfield's own failure to promptly notify this Court of his address change,[6] he was ultimately permitted to reopen the case and was granted an extension of time to file an amended complaint. *Id.* He did file an Amended Complaint on July 8, 2013. *Id.* The case was dismissed, not due to any inability of Whitfield to prosecute his case, but on Defendants' Motion to Dismiss on the basis that Plaintiff had failed to state a cognizable claim for relief under § 1983. *See* Report of Magistrate Judge; Docket Sheet, Case No. 12–21084–Civ–Martinez. (Exhibits 4 and 10 to Defendants' Motion for Summary Judgment)(DE# 72–10). As to *Whitfield v. O'Neal,* No. 13–22373–Civ–Altonaga, the case was dismissed on Plain-

6. Local Rule 11.1(g) for the Southern District of Florida provides in relevant part:
 [A] party appearing *pro se* shall conventionally file a Notice of Current Address, with updated contact information within seven (7) days of a change.

tiff's motion for voluntary dismissal in that he was pursuing the identical claims in his earlier filed action which was proceeding in this Court. *See* Docket Sheet, Case No. 13–22373–Civ–Altonaga. (Exhibit 9 to Defendants' Motion for Summary Judgment)(DE# 72–9).

In sum, Plaintiff was not impeded or hindered from pursuing his alleged civil rights violations by any action taken by Defendant Thompson since the initial dismissal in Case No. 12–21084–Civ–Martinez was without prejudice, he was later permitted to reopen his case after the original deadline to file an Amended Complaint had passed, his Amended Complaint was reviewed and considered on the merits, and the dismissal of his case was not due to any actions taken by defendant Thompson. *See Wilson v. Blankenship,* 163 F.3d 1284, 1290–91 (11th Cir.1998)(explaining that actual injury requires a showing that the official's actions "impeded" of his claim). *See also May v. Rich,* 531 F.Supp.2d 998, 999–1000 (C.D.Ill.2008), *aff'd,* 375 Fed. Appx. 592 (7th Cir.2010)("The defendant is correct in her argument that the plaintiff suffered no 'actual injury' from the dismissal of [his] thirteen cases ... since the records in those cases show that the dismissals were without prejudice and May was at liberty to renew his claims.").

■■■■ Further, Plaintiff cannot establish causation. As asserted by Defendant Thompson, to the extent that Plaintiff is alleging that he was harmed because he missed a deadline to file an amended complaint in this Court in Case No. 12–21084–Civ–Martinez, and such dismissal was the result of the actions taken by Defendant Thompson, the undisputed record shows otherwise. Again, the initial dismissal of the action was a result of Plaintiff failing to properly and timely notify this Court of his new address, resulting in this Court's order, dismissing his case when he failed to file his Amended Complaint by the date

ordered. *See* Docket Sheet, Case No. 12–21084–Civ–Martinez; Order Adopting Magistrate Judge McAliley's Report and Recommendation; Final Order of Dismissal Without Prejudice and Order Denying All Pending Motions as Moot. (Exhibits 4, 6, and 7 to Defendants' Motion for Summary Judgment)(DE# 72–4, 72–6). It is additionally noted that on March 11, 2013, Plaintiff filed a motion to reopen his case and motion for extension of time to file an amended complaint, which date was during the period he did not have his legal materials. *See* Docket Sheet, Case No. 12–21084–Civ–Martinez (Exhibit 4 to Defendant's Motion for Summary Judgment) (DE# 72–4).

The undisputed record does not support Plaintiff's contention that his failure to receive the order alerting him to the deadline to file an amended complaint and initial order dismissing the case was due to anything other than his own failure to file a timely notice of change of address. The order, requiring Plaintiff to file an amended complaint or suffer dismissal of the case was not entered until January 31, 2013, approximately two weeks after Plaintiff had been transferred to Metro West Detention Center and the case was not dismissed without prejudice until the order entered on February 22, 2013. Plaintiff certainly had sufficient time to file a change of address and seek any appropriate relief before suffering the dismissal without prejudice. Defendant Thompson's should, therefore, be awarded summary judgment in his favor.

### C. Denial of Due Process

Defendants Williams, Mothersil and Fernandez argue that they are entitled to an award of summary judgment, because Plaintiff has not demonstrated that his due process rights were violated in connection with the disciplinary proceedings. *See* Motion for Summary Judgment at 13–5.

(DE# 71). More specifically, the defendants maintain that Plaintiff has not established that he was deprived of a constitutionally protected liberty interest in that Plaintiff's punishment consisted of segregated confinement and loss of visitation privileges. *Id.* In support of their argument, the defendants have submitted their sworn declarations as well as documentary exhibits pertaining to the procedures followed by the Miami–Dade Corrections and Rehabilitation Department regarding disciplinary proceedings and records pertaining to the subject disciplinary proceedings. *See* Exhibits 13–19 to Defendants' Motion for Summary Judgment. (DE# 72–13 – 72–19).

Plaintiff has responded, arguing that he never received disciplinary segregation as punishment and is solely raising a due process claim on the basis that he was prevented from presenting witnesses in his own behalf at the disciplinary hearing to challenge the charges against him and was subsequently prevented from taking an appeal from the finding that he had violated prison rules. *See* Response to Motion for Summary Judgment at 12–14. (DE# 82). Plaintiff has submitted various documents in support of his argument, consisting of sworn declarations that he had not committed the subject violations and documentary exhibits, some of which are the same as submitted by the defendants. *See* Exhibits 3–23 to Response to Motion for Summary Judgment. (DE# 84).

### 1. *Applicable Law*

 The Fourteenth Amendment prohibits any state from depriving a person of life, liberty, or property without due process of law. See U.S. Const. amend. XIV, sec. 1. "[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-in-adequate process."

*Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir.2003). Accordingly, the first question a court must answer with any procedural due process claim is whether the injury claimed by the plaintiff is within the scope of the Due Process Clause. *Moulds v. Bullard,* 452 Fed.Appx. 851, 853–54 (11th Cir.2011), *citing, Bass v. Perrin,* 170 F.3d 1312, 1318 (11th Cir.1999). In *Sandin v. Conner,* the Supreme Court expressly held that a state prisoner who is subjected to disciplinary punishment that is within the prisoner's expected condition of confinement cannot show deprivation of a protected liberty interest. *Sandin v. Conner,* 515 U.S. 472, 486, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Only those disciplinary actions which pose an "atypical and significant hardship in relation to the ordinary incidents of prison life" may constitute a constitutional deprivation. *Id.* at 484, 115 S.Ct. 2293. Moreover, the Supreme Court has specifically rejected the contention that any action taken by correctional officials as a punitive measure necessarily encroaches upon a liberty interest protected under the Due Process Clause. *Id.*

 Regarding an inmate charged with an offense that would deprive him of good conduct time credit, it is well settled that he is entitled to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that his rights are not arbitrarily abrogated. *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). While minimal due process requirements must be met in prison disciplinary proceedings, the law does not afford a prisoner at a disciplinary hearing the full panoply of rights that constitute due process for a criminal trial. *Id.* As held in *Wolff,* the prisoner must be provided the following minimal procedural due process: 1) advance written notice of the claimed violation; 2) a written statement

of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and 3) an opportunity to call witnesses and present documentary evidence in defense, unless this would be unduly hazardous to institutional safety or correctional goals. *Wolff,* 418 U.S. at 563–66, 94 S.Ct. 2963. There is, however, no constitutional right to cross-examination or confrontation of witnesses in a prison disciplinary proceeding. *Id.* at 567–68, 94 S.Ct. 2963. The Supreme Court later expanded on what was required under the Due Process Clause if prison officials refused to call an inmate's requested witnesses at a disciplinary hearing. *See Ponte v. Real,* 471 U.S. 491, 492, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) (finding that it was undisputed that Ponte possessed a liberty interest in good-time credits, therefore, such interest could not be taken from him without procedural due process).

■ A section 1983 suit may be brought challenging disciplinary procedures, but not if the nature of the challenge to the procedures could be such as to necessarily imply the invalidity of the judgment. *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). The Eleventh Circuit has interpreted *Balisok* to foreclose all claims challenging a disciplinary proceeding unless they were "purely procedural, as in *Wolff....*" *Harden v. Pataki,* 320 F.3d 1289, 1295 n. 9 (11th Cir.2003).

### 2. *Undisputed Material Facts*

Blue shoes are provided to inmate workers, because they are unable to perform duties assigned to them in their shower slides. *See* Declaration of Aida Wilson Bryant executed on August 25, 2015.[7] On February 28, 2013, Defendant Officer Wilson[8] was approached by inmate Joseph Robbins, a trustee. *Id.* at ¶¶ 5, 7, 9. Robbins told Officer Wilson that he had loaned his blue worker shoes to Plaintiff, after Plaintiff had stated that Officer Wilson had employed Plaintiff as a trustee. *Id.* Robbins complained to Officer Wilson that Plaintiff had not returned the shoes. *Id.* Inmate Robbins requested Plaintiff to return the shoes, and Plaintiff responded that he did not have them. *Id.* at ¶ 10. When Officer Wilson inquired about Robbins's shoes, Plaintiff told the officer that he did not have them and that he had sold them. *Id.* at ¶ 11.

Officer Wilson wrote a disciplinary report, charging Plaintiff with possession of stolen property based upon Plaintiff's admissions that he had inmate Robbins's shoes and that he had sold them.[9] *Id.* at ¶ 12. All disciplinary reports are reviewed by superiors, such as, a corporal or sergeant. *Id.* at ¶ 13. Sergeant Ida Brewton reviewed the inmate disciplinary report regarding the shoes and informed Officer Wilson that the more appropriate charge based upon the circumstances was "loaning of property or anything of value for

7. The Declaration of Aida Wilson Bryant executed on August 25, 2015, has been submitted by the Defendants as Exhibit 13 to their Motion for Summary Judgment. (DE# 72-13).

8. Aida Wilson Bryant is employed as a Corporal for the Miami–Dade Corrections and Rehabilitation Department and has so been an employed since approximately June 2007, and she was employed as a corrections officer in February 2013, the time of the subject incident. *See* Declaration of Aida Wilson Bryant executed on August 25, 2015, at ¶¶ 1, 2. (DE# 72-13).

9. The defendants have provided a copy of Miami–Dade Corrections and Rehabilitation Department, Inmate Disciplinary Proceedings as Exhibit 15 to their Motion for Summary Judgment. (DE# 72-15). Discipline is administered based upon the violations and sanctions listed therein with Category I being the most serious and Category IV the least serious *See* Miami–Dade Corrections and Rehabilitation Department, Inmate Disciplinary Proceedings III., Violations and Sanctions. Possession of stolen property, charge 3.7, is a Category III offense. *Id.* at III. C.

profit or increased return." *Id. See also* Inmate Disciplinary Report prepared on February 28, 2013;[10] Inmate Profile System, Corrections & Rehabilitation Department Incident Report dated February 28, 2013.[11] Plaintiff was then issued a disciplinary report, charging him with "loaning of property or anything of value for profit or increased return."[12] *Id.*; Inmate Disciplinary Report prepared on February 28, 2013. On February 28, 2013, Corporal Laroxsha Williams[13] delivered and explained the charge to Plaintiff, provided Plaintiff with a copy of the inmate disci-

plinary report, and advised him that a hearing on the charge would take place on March 7, 2013. *Id.* at ¶ 15. *See also* Inmate Disciplinary Report prepared on February 28, 2013; Inmate Disciplinary Investigative Report;[14] Declaration of Laroxsha Williams executed on August 26, 2015, at ¶¶ 10–11. Plaintiff refused to sign the report. *See* Inmate Disciplinary Report prepared on February 28, 2013; Declaration of Benjamin Whitfield executed on October 26, 2015, at ¶ 14.[15]

Corporal Williams conducted an investigation into the incident. *See* Inmate Disci-

---

**10.** A copy of the Inmate Disciplinary Report prepared on February 28, 2013, has been submitted by the Defendants as Exhibit 14 to their Motion for Summary Judgment. (DE# 72–14).

**11.** A copy of the Inmate Profile System, Corrections & Rehabilitation Department Incident Report dated February 28, 2013, has been submitted by the Defendants as Exhibit 14 to their Motion for Summary Judgment. (DE# 72–14). The Incident was described as follows in the Report:

ON THURSDAY, FEBRUARY 28, 2013 1 AT APPROXIMATELY 0805 HOURS, INMATE ROBBINS, JOSEPH # 120024998 EXPLAINED TO ME THAT HE HAD NO BLUE SHOES TO WORK IN. I, OFC. A. WILSON QUESTIONED INMATE ROBBINS. ABOUT THE SHOES, HE EXPLAINED THAT INMATE WHITFIELD, BENJAMIN # 130003381 LIED ABOUT BEING A NEW INMATE WORKER IN M2D2. THEREFORE, INMATE ROBBINS LET HIM USED [sic] THE SHOES. I ALSO QUESTIONED INMATE WHITFIELD ABOUT THE SHOES AND HE ADMITTED TO HAVING THE SHOES. I ASKED WHITFIELD TO RETURN THE SHOES AND HE STATED "I SOLD THEM". INMATE WHITFIELD WILL BE RELOCATED FOR SELLING ANOTHER INMATES. PROPERTY. THE NEW LOCATION (M2B3) WAS GIVEN BY CLASSIFICATION OFC. MCCULLOUGH. INMATE WHITFIELD PACKED U.S. PROPERTY IN MY PRESENCE AND IT WAS. TRANSPORTED WITH HIM. THE MATTRESS WAS SANITIZED UNDER. MY SUPERVISION.

I USED NO FORCE DURING THIS INCIDENT. THE INMATE/WITNESS STATEMENTS, INMATE DISCIPLINARY REPORT, AND INMATE DISCIPLINARY INVESTIGATIVE REPORT ARE ATTACHED.

(Narrative, Inmate Profile System, Corrections & Rehabilitation Department Incident Report dated February 28, 2013).^

**12.** Loaning of property or anything of value for profit or increased return, charge 3.7, is a Category III offense. *See* Miami–Dade Corrections and Rehabilitation Department, Inmate Disciplinary Proceedings III. C., Violations and Sanctions.

**13.** Declarant Laroxsha Williams is employed as a Corporal for the Miami–Dade Corrections and Rehabilitation Department and was so employed in February 2013, the time of the subject incident. *See* Declaration of Laroxsha Williams executed on August 26, 2015, at ¶¶ 1, 2. (DE# 72–16). In February 28, 2013, Officer Williams was supervising Officer Wilson. *Id.* at ¶ 5. The Declaration of Laroxsha Williams executed on August 26, 2015, has been submitted by the Defendants as Exhibit 16 to their Motion for Summary Judgment. (DE# 72–16).

**14.** A copy of the Inmate Disciplinary Investigative Report has been submitted by the Defendants as Exhibit 14 to their Motion for Summary Judgment. (DE# 72-14).

**15.** The Declaration of Benjamin Whitfield executed on October 26, 2015, has been submit-

plinary Report prepared on February 28, 2013; Inmate Disciplinary Investigative Report. Inmate Robbins was interviewed regarding the incident and he provided a written statement in which he stated that he had received the shoes from an officer and he gave the shoes to Plaintiff when Plaintiff told him that he was a trustee. *See* Inmate/Witness Statement executed by Inmate Robbins.[16] Inmate Robbins further stated that when Plaintiff was required to return the shoes, since he was not a trustee, the shoes were never returned since Plaintiff had sold the shoes. *Id.* Plaintiff was also interviewed regarding the incident and he provided a written statement accusing Inmate Robbins of making false statements. *See* Inmate/Witness Statement executed by Inmate Whitfield.[17] According to Plaintiff, another officer, Officer Garland, gave inmate Prince Upsher a pair of shoes that had been in the storage room. *Id.* Officer Wilson had given inmate Rice, a trustee, a pair of shoes since the pair of shoes provided Rice was not the correct size. *Id.* Officer Wilson wanted Inmate Rice's old pair of shoes, but Inmate Rice had already given his shoes to another, so Officer Wilson took Plaintiff's shoes. *Id.* Plaintiff's shoes were then given by Officer Wilson to Inmate Robbins and Plaintiff asked Robbins to return the shoes, which he did, resulting in the subject charge. *Id.* Plaintiff accused Officer Wilson of making false statements, claiming that they had been made out of retaliation for grievances he had filed against her. *Id.*

When Officer Wilson told Sergeant Brewton that Plaintiff's inmate statement given in connection with the disciplinary report was false, Sergeant Brewton indicated that Plaintiff could also be charged with the violation of "lying to staff." *See* Declaration of Aida Wilson Bryant executed on August 25, 2015, at ¶ 14; Declaration of Laroxsha Williams executed on August 26, 2015, at 59. Plaintiff was then charged in a second disciplinary report with lying or providing a false statement to staff.[18] *See* Inmate Disciplinary Report prepared on February 28, 2013, charging lying or providing false statement.[19] On February 28, 2013, Corporal Williams delivered and explained the second charge to Plaintiff, provided Plaintiff with a copy of the inmate disciplinary report, and advised him that a hearing on the charge would also take place on March 7, 2013. *See* Inmate Disciplinary Report prepared on February 28, 2013, charging lying or providing false statement. On the same date, Corporal Williams provided Plaintiff with a copy of the second disciplinary report and Plaintiff again refused to sign the report. *See* Declaration of Aida Wilson Bryant executed on August 25, 2015, at 515. *See also* Inmate Disciplinary Report prepared on February 28, 2013, charging lying or providing false statement. An investigation was conducted regarding the second incident. *See* Inmate Disciplinary Investigative Report;[20]

---

ted by Plaintiff as Exhibit 15 to his Response to the Motion for Summary Judgment. (DE# 84).

**16.** The Inmate/Witness Statement executed by Inmate Robbins has been submitted by the Defendants as Exhibit 14 to their Motion for Summary Judgment. (DE# 72–14).

**17.** The Inmate/Witness Statement executed by Inmate Whitfield has been submitted by the Defendants as Exhibit 14 to their Motion for Summary Judgment. (DE# 72–14).

**18.** The charge lying or providing false statement to staff, Charge 3.17, is a Category III offense. *See* Miami–Dade Corrections and Rehabilitation Department, Inmate Disciplinary Proceedings III. C.

**19.** A copy of the second Inmate Disciplinary Report prepared on February 28, 2013, has been submitted by the Defendants as Exhibit 14 to their Motion for Summary Judgment. (DE# 72–14).

**20.** A copy of the Inmate Disciplinary Investigative Report with regard to the lying charge

Inmate Disciplinary Report prepared on February 28, 2013, charging lying or providing false statement. Inmate Whitfield's written statement pertaining to the initial charge was considered as well as Officer Wilson's statements. *See* Inmate Disciplinary Report prepared on February 28, 2013, charging lying or providing false statement.

On March 5, 2013, a disciplinary hearing was held regarding the inmate disciplinary reports before a three-member committee. *See* Inmate Disciplinary Report prepared on February 28, 2013, charging loaning of property or anything of value for profit or increased return; Inmate Disciplinary Report prepared on February 28, 2013, charging lying or providing false statement. *See also* Declaration of Mario Mothersil executed on August 27, 2015.[21] Defendants Mario Mothersil[22] and Elizabeth Fernandez were two of the three members. *See* Inmate Disciplinary Report prepared on February 28, 2013, loaning of property or anything of value; Inmate Disciplinary Report prepared on February 28, 2013, charging lying or providing false statement. Plaintiff entered pleas of not guilty to the charges. *Id.* Plaintiff's written statements denying the charges were considered by the hearing committee as were the written incident reports. *Id.* The hearing committee found Plaintiff guilty of

both charged violations. *Id.* The hearing committee recommended that Plaintiff's visitation rights be suspended for a period of thirty days as to the charge of loaning of property or anything of value and that he receive twenty days' confinement and transfer from Metro West Detention Center as to the lying charge.[23] *Id.* The Facility Supervisor concurred with the recommendations of the committee. *Id.*

The general procedures for disciplinary hearings are set forth in the Miami–Dade Corrections and Rehabilitation Department, Inmate Disciplinary Procedures. *See generally* Miami–Dade Corrections and Rehabilitation Department, Inmate Disciplinary Proceedings VIII–IX. These procedures provide that if an inmate arrives at a disciplinary hearing without a copy of the inmate disciplinary report, the inmate would be given a copy of the Report and any related documents. *See* Declaration of Mario Mothersil executed on August 27, 2015, at ¶ 6. Inmates are also permitted to call witnesses in connection with the disciplinary hearing and, if an inmate wished to call witnesses as part of the disciplinary hearing, the disciplinary committee would locate the inmate witnesses and go and speak to the witnesses. *Id.* at ¶ 7. Disciplinary committee members are responsible for making a determination regarding the violation charged in

has been submitted by the Defendants as Exhibit 14 to their Motion for Summary Judgment. (DE# 72–14)

**21.** The Declaration of Mario Mothersil executed on August 27, 2015, has been submitted by the Defendants as Exhibit 19 to their Motion for Summary Judgment. (DE# 72-19).

**22.** Defendant Mario Mothersil was employed as a Counselor for the Miami–Dade Corrections and Rehabilitation Department from June 1999, through December 2014. *See* Declaration of Mario Mothersil executed on August 27, 2015, at ¶ 1. As a Counselor, he was responsible for participating in inmate

disciplinary hearings as part of a disciplinary committee and during his time as Counselor, he participated in many inmate disciplinary hearings. *Id.* at ¶¶ 4, 5.

**23.** When an inmate is found guilty of a Category III violation, he may be sanctioned as follows: criminal prosecution, disciplinary confinement of up to twenty days, recommended loss of earned gain time, loss of one or more privileges for up to twenty days, confinement to housing area for a maximum of seven days, and loss of gain time. *See* Miami-Dade Corrections and Rehabilitation Department, Inmate Disciplinary Proceedings III. C.

the disciplinary report as well as for making a recommendation regarding sanctions. *Id.* at ¶ 10. The disciplinary committee's findings and recommendations are either unanimous or by majority vote (i.e., 2–1). *Id.* at ¶ 11. Inmates are not permitted to appeal the findings of the disciplinary committee, but they can appeal any issue that they believed violated the disciplinary process itself. *Id.* at ¶ 12. A facility/bureau supervisor is ultimately responsible for adopting or disapproving the recommendations of the disciplinary committee. *Id.* at ¶ 13. Once the facility/bureau supervisor renders a decision regarding the disciplinary committee's recommendations and signs the inmate disciplinary report, inmates are given notice of the outcome. *Id.* at ¶ 14.

### 3. *Facts in Dispute*

There are possibly disputed issues of fact regarding three issues. The first issue involves whether Plaintiff requested that fellow inmates be interviewed and their statements and/or testimony be presented at the disciplinary hearing. The second issue involves whether or when Plaintiff received a copy of the disciplinary hearing findings and resultant sanctions. The third issue involves what if, anything, Plaintiff was advised regarding his rights to pursue an appeal from the disciplinary findings.

As to the witness issue, Defendant Williams in her Declaration pursuant to 28 U.S.C. § 1746 states: "Plaintiff never asked me to interview or otherwise informed me of other inmates that would have information regarding the charges of the disciplinary reports." (Declaration of Laroxsha Williams executed on August 26, 2015, at ¶ 12). Plaintiff states in his Declaration, pursuant to 28 U.S.C. § 1746, in pertinent part as follows:

21. On March 15, 2015, Albert Wiggins and Frazier Adley, both provided Plaintiff with signed affidavits about their knowledge of Defendant Aida Wilson['s] actions on February 28, 2013. (reference to exhibits omitted).

22. At no time did Defendant Laroxsha Williams obtain the witnesses (Inmates Prince Upsher, Demetrius Rice, or Officer Garland), statements that Plaintiff named in the witness statement, (reference to exhibit omitted).

\* \* \*

25. Defendant Mothersil and Fernandez did not interview Plaintiffs witnesses, (reference to record omitted). Defendant Mothersil advised Plaintiff that Plaintiff could not appeal their disciplinary team[']s finding because Plaintiff did not have a right to appeal, (record reference omitted).

(Declaration of Benjamin Whitfield executed on October 26, 2015, at ¶¶ 21, 22, 25).

Plaintiff has provided Affidavits made under the penalty of perjury from two former fellow inmates: Frazier Earl Adley and Albert Wiggins. Adley states in his Affidavit that "on February 23, [Officer Wilson] came up with the idea that she would say that Benjamin Whitfield had stolen the use to be trustee's shoes because she saw a blue pair of 'Bo–Bo' county issues trustee shoes under Benjamin Whitfield's bunk on the floor." *See* Affidavit of Frazier Earl Adley executed on March 8, 2013, at 1–2.[24] According to Adley, the former trustee was Joseph Robbins and Robbins slept next to Whitfield. *Id.* at 2. Adley states that he informed Officer Wilson that Robbins had his own shoes. *Id.* Adley goes on to state that on February 28, 2013, Plaintiff came to his bunk to return an item of clothing and

---

24. Frazier Earl Adley's Affidavit executed on March 8, 2013, has been submitted by Plaintiff as Exhibit 4 to his Response to the Motion for Summary Judgment. (DE# 84).

stated that he was being transferred from the dorm. Whitfield was then escorted from the dorm by Officer Williams. *Id.* Adley states that he saw Whitfield on March 1, 2013, and Whitfield requested that he prepare an affidavit indicating that the allegations of the disciplinary reports were false. *Id.* at 1–3. Adley states that he "saw Benjamin Whitfield about one week later on March 8, 2013, and signed this affidavit." *Id.* at 2. Wiggins similarly states in his Affidavit that Officer Wilson had falsely accused Plaintiff of stealing Robbins's shoes and Whitfield was transferred from the dorm based upon the charge. *See* Affidavit of Albert Wiggins executed on March 16, 2013, at 1–2.[25] Wiggins states that the day following Whitfield's transfer from the dorm, inmate Adley told him that Whitfield requested statements from Adley and Wiggins about what had happened. *Id.* Wiggins states that he prepared a statement and gave it to inmate Adley to give to Whitfield. *Id.* The following week, Adley gave him a typewritten statement for his signature and he signed the statement. *Id.* at 2.

As to the next issues, whether or when Plaintiff received a copy of the disciplinary hearing findings and resultant sanctions and what if, anything, Plaintiff was advised regarding his rights to pursue an appeal from the disciplinary findings and sanctions, Plaintiff states in his affidavit that Defendant Mothersil told him that he could not appeal the disciplinary team's finding, because he did not have the right to an appeal and he was not timely advised of the findings and sanctions. *See* Declaration of Benjamin Whitfield executed on October 26, 2015, at ¶¶ 25, 26. Defendant Mothersil states in his affidavit that in-

mates are not permitted to appeal the findings of the disciplinary committee, but they can appeal any issue that they believed violated the disciplinary process itself. *See* Declaration of Mario Mothersil executed on August 27, 2015, at 512. He further states that once the facility/bureau supervisor renders a decision regarding the disciplinary committee's recommendations and signs the inmate disciplinary report, inmates are given notice of the outcome. *Id.* at ¶ 14.

#### 4. *Analysis*

Whitfield complains that defendants Williams, Mothersil and Fernandez denied him due process in connection with the disciplinary proceedings related to the subject charges and argues that his resultant punishment therefore occurred without requisite procedural protections. Specifically, Whitfield asserts that the defendants denied him due process, because the correctional officials failed to interview requested witnesses in his behalf, did not properly advise him of his appellate rights, etc.

As this case comes before the Court on the defendants' motion for summary judgment, the Court views the facts in the light most favorable to Plaintiff, the non-moving party, drawing those facts from the pleadings and evidentiary materials on file. This Court resolves all issues of material fact in Plaintiff's favor and approaches the facts from Plaintiff's perspective, because the issues concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts show a violation of clearly established law.[26] *See generally Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir.2012) (citation omitted).

---

**25.** Albert Wiggins's Affidavit executed on March 16, 2013, has been submitted by Plaintiff as Exhibit 16 to his Response to the Motion for Summary Judgment. (DE# 84).

**26.** This Court notes that the operative facts at the summary judgment stage "may not be the 'actual' facts of the case." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 n. 3 (11th Cir.2000).

From the above-reviewed record, it appears that there are certain factual disputes with regard to the February 28, 2013, incident, the disciplinary hearing, and any appeal therefrom.[27] However, only disputes involving material facts are relevant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003)("The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." (internal quotation and citation omitted)).

The materially uncontroverted facts reveal that Whitfield was found guilty of the charged violations and, as a result, he received the following sanctions: thirty days' loss of visitation privileges as to the loaning of property or anything of value for profit and a term of twenty days' confinement and transfer to another facility as to the lying or providing a false statement to staff charge. *See* Inmate Disciplinary Report, charging loaning of property or anything of value for profit, at Section VI (Finding of Hearing Officer/Disciplinary Committee) and Section VII (Concur with Recommendations); Inmate Disciplinary Report, charging lying or providing false statement, at Section VI (Finding of Hearing Officer/Disciplinary Committee) and Section VII (Concur with Recommendations).

Since Plaintiff has failed to demonstrate that he was deprived of a protected liberty interest, the defendants are entitled to an award of summary judgment. As indicated by the above discussion of the applicable caselaw, it is clear that an inmate is constitutionally entitled to procedural due process if he were deprived of a protected liberty interest. *See e.g., Sandin*, 515 U.S. at 487, 115 S.Ct. 2293; *Bass*, 170 F.3d at 1318. *See also Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)(noting that it "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest . . .").

Punishment for violating prison rules and regulations in the form of disciplinary confinement does not constitute the deprivation of a constitutionally protected liberty interest. *See Sandin*, 515 U.S. at 486, 115 S.Ct. at 2301 (holding that discipline in segregated confinement does not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest). The same is true for the temporary loss of privileges, such as, visitation. *See Overton v. Bazzetta*, 539 U.S. 126, 137, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003)(stating that "withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline . . . . is not a dramatic departure from accepted standards for conditions of confinement"); *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460–61, 109 S.Ct. 1904, 1908–09, 104 L.Ed.2d 506 (1989)(concluding that "[t]he denial of prison access to a particular visitor . . . is not independently protected by the Due Process Clause"). *See also Charriez v. Sec'y, Florida Dep't of Corr.*, 596 Fed.Appx. 890, 894 (11th Cir.2015)(holding that Plaintiff did not have a protected liberty interest in unfettered visitation privileges while in prison); *Moulds v. Bullard*, 452 Fed.Appx. 851, 854–55 (11th Cir.2011) (temporary loss of privileges did not involve a liberty interest). The withdrawal of visitation privi-

---

**27.** This Court points out that Affiant Adley executed his statement on March 8, 2013, and the disciplinary hearing was conducted on March 5, 2013, three days before. Also, upon full review of Adley's declaration, certain statements contained therein appear inconsistent, rendering the affidavit incredible on that basis alone. However, the affiant's credibility need not be resolved by this Court in that any possible factual disputes are not dispositive of the due process claim for the reasons stated herein.

leges for a designated period of time as a means of effecting prison discipline did "not present a dramatic departure from the basic conditions" of confinement.

Thus, the requirements established in *Wolff* are inapplicable to Plaintiff because he lost no early release credits and his loss of visitation privileges and possible disciplinary confinement[28] was not an "atypical, significant deprivation." *See Sandin, supra. See also Ponte v. Real, supra.* As a consequence, Whitfield cannot prevail on his due process claim in this civil rights action. *See Smith v. Deemer,* 2013 WL 6332974, *3 (M.D.Fla. Dec. 5, 2013), *aff'd,* 641 Fed.Appx. 865, 2016 WL 104437 (11th Cir. Jan. 11, 2016). Since Plaintiff was not deprived of a protected liberty interest, this Court need not reach the question of what process was due and if Plaintiff received those due process protections. Without a constitutionally protected liberty interest, Plaintiff cannot state a claim under the Due Process Clause and Defendants Williams, Mothersil and Fernandez's motion for summary judgment should be granted.

### D. *Retaliation*

Defendant Wilson argues that she is entitled to an award of summary judgment on Plaintiff's claim, because Plaintiff cannot as a matter of law maintain a retaliation claim against her. *See* Motion for Summary Judgment at 11–13. (DE# 71). More specifically, the defendant maintains that because Plaintiff was found guilty of the charged violations, he cannot state a claim for relief. *Id.* at 11–12. Defendant Wilson also argues that Plaintiff's claim cannot survive summary judgment since Plaintiff has not demonstrated that she was motivated by retaliatory animus with regard to the charged disciplinary violation. *Id.* at 12–13. In support of her

argument, the defendant has submitted her sworn declaration as well as documentary exhibits pertaining to the Internal Affairs complaint made against her by Plaintiff. *See* Exhibits 12, 13 to Defendants' Motion for Summary Judgment. (DE# 72–12, 72–13). Plaintiff has responded that Defendant Wilson was well-aware of the grievances he submitted against her and that was the reason she fabricated the charges against him. *See* Response to Motion for Summary Judgment at 8–11. (DE# 82). Plaintiff has submitted various documents in support of his argument, consisting of sworn declarations that he had not committed the subject violations and documentary exhibits, some of which, are the same as submitted by the defendants. *See* Exhibits 4, 5, 14, 15, 16, 19 to Response to Motion for Summary Judgment. (DE# 84).

#### 1. *Applicable Law*

The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. *See Farrow v. West,* 320 F.3d 1235, 1248 (11th Cir.2003), *citing, Thomas v. Evans,* 880 F.2d 1235, 1242 (11th Cir. 1989). A prisoner can establish retaliation by demonstrating that the prison official's actions were "the result of his having filed a grievance concerning the conditions of his imprisonment." *Id.* at 1248 (*quoting Wildberger v. Bracknell,* 869 F.2d 1467, 1468 (11th Cir.1989)) (internal quotation marks omitted). *See also O'Bryant v. Finch,* 637 F.3d 1207, 1212 (11th Cir.2011).

To state a claim for retaliation, a prisoner must allege that "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct

---

**28.** Plaintiff states that he was never placed in disciplinary confinement. *See* Response to Defendants' Motion for Summary Judgment

at 13. (DE# 82). The record reveals that Plaintiff was returned to the Florida Department of Corrections on March 19, 2013.

would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." *O' Bryant,* 637 F.3d at 1212 (alterations in original) (citation omitted). For the third element, a prisoner must allege facts showing that the alleged retaliatory conduct would not have occurred but for the retaliatory motive. *Id.* at 1217. To state a claim, a prisoner need not allege a violation of a separate and distinct constitutional right, because "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." *Hilton v. Secretary for Dept. of Corrections,* 170 Fed.Appx. 600, 603 (11th Cir.2005)(*quoting Thomas,* 880 F.2d at 1242). The Eleventh Circuit has held that a prisoner "cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process." *O' Bryant,* 637 F.3d at 1215.

### 2. *Undisputed Material Facts*

On February 23, 2013, Plaintiff submitted a grievance, complaining that Officer Wilson's behavior directed at certain inmates who complained about her refusal to allow inmates to receive new shower slides to replace their broken ones was threatening and constituted harassment. *See* Miami–Dade Corrections and Rehabilitation Department, Inmate Action/Remedy Request dated February 23, 2013.[29] The form was received by corrections staff on February 26, 2013. *Id.* On March 12,

2013, corrections officers responded to the grievance, informing Plaintiff that the matter was under investigation. *Id.*

Also, on February 23, 2013, Plaintiff filed a grievance, complaining that Officer Wilson had on a daily basis been utilizing the county's computer for her personal use and that she should be terminated for doing so and not performing the duties of her job. *See* Letter to Captain C. Jones, Facility Supervisor, Metro West Detention Center, Miami–Dade Corrections & Rehabilitation Department, from Lorien Felton, Inmate Service Technician, Program Services Division, Metro West Detention Center, Miami Dade Corrections & Rehabilitation Department, dated March 8, 2013, with attached Miami–Dade Corrections and Rehabilitation Department, Inmate Action/Remedy Request dated February 23, 2013.[30] The grievance was first sent to Operations on March 6, 2013, and then forwarded to Captain Jones for a response by March 22, 2013. *Id.*

On February 25, 2013, Plaintiff wrote a letter to the Internal Affairs Bureau, alleging that Officer Wilson and a second officer had been using county property for personal reasons during their shift (i.e., a county computer in the housing unit). *See* Memorandum to Chief Susan Kronberg, Stable Housing Division, to Lieutenant John Johnson, Metro West Detention Correction Center dated June 1, 2013.[31] The letter was received on March 1, 2013, and an investigation was conducted into the allegation of misuse of county property during which Officer Wilson was interviewed. *Id.* at 1–2. Officer Wilson provided a statement, denying the allegation. *Id.* Plaintiff was not interviewed, because

---

**29.** A copy of the Miami–Dade Corrections and Rehabilitation Department, Inmate Action/Remedy Request dated February 23, 2013, is Exhibit 3 to Plaintiff's Response to the Motion for Summary Judgment. (DE# 84).

**30.** A copy of the letter with attached grievance is Exhibit 5 to Plaintiff's Response to the Motion for Summary Judgment. (DE# 84).

**31.** A copy of the letter is Exhibit 12 to Defendants' Motion for Summary Judgment. (DE# 72-12).

he had been returned to the Florida Department of Corrections on March 19, 2013. *Id.* It was determined that the allegations could not be sustained in that there was no evidence or additional witnesses to support the allegations. *Id.* A written report was prepared on June 1, 2013, setting forth the allegations, investigation and results. *Id.* at 1–3. As of February 28, 2013, Officer Wilson had not been aware of any grievances or complaints Plaintiff had made against her. *Id.* *See also* Declaration of Aida Wilson Bryant executed on August 25, 2015, at ¶¶ 16, 17.

### 3. Analysis

■■ Plaintiff claims that Defendant Wilson violated his First Amendment rights when she retaliated against him for submitting complaints and grievances against her. He maintains the retaliation took the form of falsely accusing him of committing the subject discussed disciplinary charges, resulting in sanctions entered against him.

As correctly argued by Defendant Wilson, because Plaintiff was found guilty of the violations charged in the inmate disciplinary reports, he cannot state a claim for retaliation based on those incidents. The Eleventh Circuit stated in relevant part as follows in *O'Bryant* :

[W]e agree with the Eighth Circuit that a prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction. *See, e.g., Hartsfield v. Nichols,* 511 F.3d 826, 829 (8th Cir.2008) (involving allegations of false disciplinary reports and concluding "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule"); *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir.1994)(noting inmate alleged officer was lying but concluding that the finding of an actual violation of prison rules was based on some evidence of the violation and "essentially checkmates [the prisoner's] retaliation claim"); *Orebaugh v. Caspari,* 910 F.2d 526, 528 (8th Cir.1990) ("[N]o claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform.").

*O'Bryant,* 637 F.3d at 1215–16.

■■ The record here shows that there certainly was 'some evidence' that Plaintiff actually committed a rule violation.[32] That evidence consisted of Officer Wilson's statements and the written statement of inmate Robbins.[33] While Plaintiff

**32.** It is noted that a finding of guilt requires only the support of some facts or any evidence at all to support the action taken by prison officials. *Superintendent Massachusetts Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)(holding "that revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record"); *Broussard v. Johnson,* 253 F.3d 874, 877 (5th Cir.2001) (holding that prison disciplinary proceedings are overturned only where no evidence in the record supports the decision), *citing, Smith v. Rabalais,* 659 F.2d 539, 545 (5th Cir.1981), *cert. denied,* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982).

*See also O'Bryant v. Finch,* 637 F.3d 1207, 1213–14 (11th Cir.2011). Under this standard, as long as there is a "modicum" of evidence or "any" evidence in the record to support the conclusion of the disciplinary body, its determination will be upheld. *See Zavaro v. Coughlin,* 970 F.2d 1148, 1148–49 (2d Cir.1992). In sum, the disciplinary determination must not be arbitrary or capricious, but a reviewing court may not substitute its judgment for that of prison authorities. *Stewart v. Thigpen,* 730 F.2d 1002, 1005 (5th Cir. 1984); *Smith v. Rabalais,* 659 F.2d at 545.

**33.** It is interesting to note that throughout his pleadings and exhibits, Plaintiff maintains that the written statement provided by

maintains that the evidence against him was false, "[w]hether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel." *O'Bryant*, 637 F.3d at 1215. As aptly noted by the Eleventh Circuit in *O'Bryant*, "[t]o find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance." *Id.* Because Plaintiff was found guilty of the disciplinary charges resulting in the disciplinary harm at issue here, his retaliation claim fails. That is so because the causal connection between the Plaintiff's protected activity and the adverse action is severed. *O'Bryant*, 637 F.3d at 1215–16.

█ Even if the findings of guilt as to the disciplinary charges do not *per se* bar the retaliation claim here, Plaintiff's claim fails because he has not presented evidence of retaliatory animus on the part of Defendant Wilson. *O'Bryant*, 637 F.3d at 1219, *citing, Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir.1995)(affirming summary judgment for defendant Collins because plaintiff "produced nothing, beyond his own conclusory allegations, suggesting that Collins' actions in compliance with the strip search regulations were motivated by a retaliatory animus"); *Moton v. Cowart,*

631 F.3d 1337, 1341 (11th Cir.2011) ("To establish causation, the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights.")(quotation marks omitted).

The record shows that Plaintiff's first grievance submitted on February 23, 2013, involved inmates other than Plaintiff and Defendant's response thereto was not directed at Plaintiff. *See* Miami–Dade Corrections and Rehabilitation Department, Inmate Action/Remedy Request dated February 23, 2013.[34] The February 23, 2013, grievance made by Plaintiff, complaining about Officer Wilson's alleged improper use of the county computer may have been received on February 26, 2013, but it was not sent to Operations until March 6, 2013, and was not sent to Captain Jones until March 8, 2013. *See* Letter to Captain C. Jones, Facility Supervisor, *Metro West Detention Center*, Miami–Dade Corrections & Rehabilitation Department, from Lorien Felton, Inmate Service Technician, Program Services Division, Metro West Detention Center, Miami Dade Corrections & Rehabilitation Department, dated March 8, 2013, with attached Miami–Dade Corrections and Rehabilitation Department, Inmate Action/Remedy Request dated February 23, 2013.[35] Similarly, Plaintiff's letter to the Internal Affairs Bureau was not received until March

Robbins in connection with the disciplinary proceeding was unreliable in that Robbins was unable to read or write, because he is illiterate. *See e.g.*, Affidavit of Albert Wiggins at 1; Affidavit of Frazier Earl Adley at 2. Even if inmate Robbins could not read or write and even if he had not personally prepared the written statement, there is no indication whatever in the record that Robbins's statement had not been read to him before he signed the statement. Further, review of the Narrative Section of the Incident Report indicates that Officer Wilson spoke to Inmate Robbins on February 28, 2013, and inmate

Robbins verbally provided the same information included in the written statement. *Compare* Narrative, Inmate Profile System, Corrections & Rehabilitation Department Incident Report dated February 28, 2013 with Inmate Witness Statement of Robbins. (Exhibit 14 to Defendants' Motion for Summary Judgment).

34. *See* Exhibit 3 to Plaintiff's Response to the Motion for Summary Judgment. (DE# 84).

35. *See* Exhibit 5 to Plaintiff's Response to the Motion for Summary Judgment. (DE# 84).

1, 2013, and Officer Wilson was not interviewed until June 2013. *See* Memorandum to Chief Susan Kronberg, Stable Housing Division, to Lieutenant John Johnson, Metro West Detention Correction Center dated June 1, 2013.[36] Plaintiff's allegations that the subject disciplinary charges were made based upon his complaints are, therefore, clearly conclusory. Furthermore, the statements made by inmates Adley and Wiggins in their affidavits are conclusory, speculative and based upon generalities. *See e.g.,* Affidavit of Frazier Earl Adley at 1–2; Affidavit of Albert Wiggins at 1–2. The affiants do no more than speculate that the actions taken by defendant Wilson (i.e., charging Plaintiff with the subject disciplinary infractions) were based upon certain grievances submitted by Plaintiff during unspecified periods of time. *Id.* The record does not support a finding of retaliatory animus.[37]

 And, finally, even assuming arguendo that Plaintiff has shown that Defendant Wilson was subjectively motivated to discipline him because of his grievances, the record shows that Defendant Wilson would have taken the same disciplinary actions in the absence of Plaintiff's protected activity. *O'Bryant,* 637 F.3d at 1219, *citing, Smith v. Mosley,* 532 F.3d 1270, 1278 (11th Cir.2008)(stating "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he ... prevail[s] on ... summary judgment"); *Moton,* 631 F.3d at 1342 (quoting same). Here, Plaintiff was found guilty of the disciplinary charges and he would have suffered the same adverse action even if he had not engaged in

the grievances, as clearly indicated by full review of the record.

For all these reasons, Defendant Wilson is entitled to judgment as a matter of law.

### E. *Qualified Immunity*

The defendants additionally argue that they are entitled to judgment as a matter of law based upon qualified immunity. Finding no constitutional violation based upon the record as to any of the defendants, the defendants' alternate argument of qualified immunity need not be reached. *See e.g., Hilton v. Secretary for Dept. of Corrections,* 170 Fed.Appx. 600, 604 n. 4 (11th Cir.2005)(holding that because Plaintiff failed to state a claim for excessive force, the court need not reach Plaintiff's argument that Defendant was not entitled to qualified immunity), *citing, Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). *See also Palmer v. Bracy,* 2011 WL 4005887, *9 (M.D.Fla. Sept. 9, 2011)("As a matter of law, the Court finds that the Defendant did not violate Plaintiff's Eighth Amendment rights. Because the Court finds no constitutional violation, the Court need not address Defendant's argument that he is entitled to qualified immunity.").

### IV. *Conclusion*

Plaintiff has not provided this Court with competent evidence to refute any of the Defendants' arguments that no genuine issue of material fact remain regarding Plaintiff's claims against them. The joint motion for summary judgment filed by the defendants should, therefore, be granted in that the pleadings, together with the affidavits and documentary exhibits show that

---

**36.** *See* Exhibit 12 to Defendants' Motion for Summary Judgment. (DE# 72-12).

**37.** Speculation or conjecture from a party cannot create a genuine issue of material fact. *See Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1181 (11th Cir.2005). *See also Vega v. Invsco*

*Group, Ltd.,* 432 Fed.Appx. 867, 869–70 (11th Cir.2011)(stating, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.' ").

all defendants are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## V. *Recommendations*

Based upon the foregoing, the undersigned recommends that Defendants' Motion for Summary Judgment (DE# 71) be GRANTED and final judgment be entered in favor of all Defendants. It is further recommended that this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this *29th* day of January, 2016.